# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No. 2:15-CR-080** |
| **Plaintiff,** | : | **Case No. 2:14-CR-127** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **ROBERT B. LEDBETTER,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter comes before the Court on the Government's notice of proposed trial groupings and Defendants' motions to sever due to an alleged misjoinder under Federal Rule of Criminal Procedure 8(b) or prejudicial joinder under Rule 14.[1]  Under the Government's proposal, the defendants would stand trial in three separate groupings, based on a commonality of evidence and by trying together all co-defendants who are charged in each substantive murder count.  Defendants oppose these trial groupings for a host reasons, including the potential for "spillover" evidence from their co-defendants' charges, the purported risks associated with "mega-trials," the possibility that certain defendants will present antagonistic defenses, and alleged Confrontation Clause issues concerning the admission of their co-defendants' out-of-court statements.  The Court finds joinder of the proposed trial groupings proper and not unduly prejudicial.  Accordingly, the Court **DENIES** Defendants' motions for severance.

---

[1] The Government filed a notice of proposed trial groupings on July 31, 2015, in which the Government proposed three separate trials.  (Doc. 639).  Twelve defendants subsequently filed motions for severance.  Allen L. Wright (Doc. 670), Deounte Ussury (Doc. 664), Thomas E. Coates (Docs. 425 and 669), Freddie K. Johnson (Doc. 672), DeShawn Smith (Doc. 668), Rastaman A. Wilson (Doc. 661), and Clifford L. Robinson (Docs. 225, 393, and 641), moved for severance under *both* Rule 8(b) and Rule 14.  By contrast, Lance A. Green (Doc. 667), Christopher A. Harris (Doc. 666), Robert L. Wilson III. (Doc. 562), Lance Reynolds (Doc. 671), and Jonathan Holt (Doc. 436), moved for severance solely under Rule 14.  The Government opposed Defendants' motions for severance.  (Docs. 468, 696, 697, and 698).

## I. BACKGROUND

On June 23, 2014, a federal grand jury returned a twenty-five count Indictment in Case Number 2:14-cr-127, charging seventeen defendants with a number of violations under federal law connected to the defendants' alleged involvement in the Short North Posse, an alleged criminal organization in the Short North area of Columbus, Ohio.  (Doc. 14).  The first count in the Indictment alleged the existence of a RICO conspiracy from 2005 until 2014, in which the enterprise, the Short North Posse, committed murder, attempted murder and robbery, distributed and possessed with the intent to distribute controlled substances, tampered with witnesses, and committed acts of extortion, robbery, and retaliation against witnesses.  The remaining counts included eleven counts of murder in aid of racketeering, one count of murder through the use of a firearm during and in relation to a crime of violence, four counts of murder through the use of a firearm during and in relation to a drug trafficking crime, one count of conspiracy to murder a witness, one count of use of a firearm during and in relation to a crime of violence, four counts of being a felon in possession of a firearm, one count of possession with intent to distribute cocaine, and one count of possession with intent to distribute heroin.

On October 20, 2014, the grand jury returned a Superseding Indictment adding three new defendants and thirteen counts, bringing the total to twenty defendants and thirty-eight counts. (Doc. 300).  These thirteen new counts included one count of attempted possession with intent to distribute cocaine, five counts of use of a firearm during and in relation to a drug trafficking crime, murder in aid of racketeering, four counts of possession with the intent to distribute marijuana, one count of attempted possession with intent to distribute marijuana, and one count of witness tampering.  The three new defendants were Andre M. Brown, Johnathan Holt, and Christopher V. Wharton.

On April 2, 2015, the grand jury returned another Indictment that was later assigned as a separate case—Case Number 2:15-cr-080. The 2015 Indictment named four defendants (Robert B. Ledbetter, Christopher A. Harris, Rashad A. Liston, and Deounte Ussury), all of whom were charged previously in the Superseding Indictment in Case Number 2:14-cr-127. The 2015 Indictment also included two new counts: one for murder in aid of racketeering and one for murder through the use of a firearm during and in relation to a drug trafficking crime—both related to the murder of Marschell Brumfield, Jr. in 2007. Due to the similarity of the charges in both cases and the fact that all four defendants also were charged in Count One of the Superseding Indictment for their role in the RICO conspiracy, this Court joined Case Number 2:15-cr-080 with Case Number 2:14-cr-127 under Federal Rule of Criminal Procedure 13. (Doc. 595).

In total, fourteen defendants are charged in the RICO conspiracy count, which includes 112 overt acts allegedly committed in furtherance of the conspiracy. The Government, moreover, has reserved the right to adduce evidence of any overt act about which it has evidence, regardless of whether the Superseding Indictment specifically identifies that overt act. The six defendants who do not face the conspiracy charge are all charged with at least one count of murder in aid of racketeering relating to their membership and/or association with the Short North Posse, among other charges. Under the Superseding Indictment in Case Number 2:14-cr-127 and the 2015 Indictment in Case Number 2:15-cr-080, the defendants collectively face a total of forty counts. Although fourteen defendants initially faced a potential capital prosecution, the Government has informed the Court and the defendants of its intent not to seek the death penalty for any of the defendants. (Doc. 563).

Due to the complexity of this case, society's need for speedy and efficient trials, and the defendants' interest in fair and accurate results, the Court requested that the Government propose a multi-trial plan for these proceedings.  (*See* Doc. 531).  Consistent with that request, the Government proposed splitting the defendants into three separate groupings "based primarily on commonality of evidence and by grouping the defendants with all of their co-defendants in each of the charged murders."  (Doc. 639).  Under the Government's proposal, each trial would include Count One (the overarching RICO conspiracy charge), at least two murder counts, and the remaining substantive counts applicable to the specified defendants.  (*Id.*).

### A.  Trial I – April 4, 2016

The first trial would center on the RICO conspiracy charge (Count One), as well as the murders of Alan Johnson (Count Four), Donathan Moon (Counts Five and Six), Marcus Peters (Counts Seven and Eight), Rodriccos Williams (Counts Nine and Ten), Dante Hill (Count Eleven), Tyrell Davis (Counts Fifteen and Sixteen), Crystal Fyffe (Counts Twenty-Nine, Thirty, and Thirty-One), and Marschell Brumfield, Jr. (2015 Indictment, Counts One and Two).  (*Id.*). The first trial thus would involve the following eight defendants, whom the Government deems "most likely to be going to trial" in light of ongoing plea negotiations: Robert B. Ledbetter, Christopher A. Harris, Robert L. Wilson III, Rashad A. Liston, Deounte Ussury, Rastaman A. Wilson, Clifford L. Robinson, and Troy A. Patterson.[2]  (*Id.*).  Ledbetter, Harris, Wilson III, Liston, and Ussury each face the RICO conspiracy count.  (Doc. 300).  Wilson, Robinson, and Patterson, on the other hand, do not.  (*Id.*).  Nevertheless, Wilson, Robinson, and Patterson each face one count of murder in aid of racketeering (Counts Five and Fifteen, respectively) with respect to the same RICO enterprise that the Government alleges under Count One.  (*Id.*).

---

[2]  The Government represents that Troy A. Patterson recently signed a plea agreement and thus, presumably, will not proceed to trial.  (*See* Doc. 639).

4

### B. Trial II – July 11, 2016 (Tentative)

The second trial likewise would center on the RICO conspiracy charge (Count One), as well as the murders of Shaniqua Hester (Count Two) and Michael Teague (Count Three). (Doc. 639).  The second trial would involve the following five defendants: Lance A. Green, Allen L. Wright, Tysin L. Gordon, Thomas E. Coates, and Freddie K. Johnson, all of whom face the RICO conspiracy count.  (*Id.*).  The second trial also would include two felon-in-possession counts applicable only to Johnson (Counts Thirty-Two and Thirty-Three).  (*Id.*).

### C. Trial III – September 26, 2016 (Tentative)

Finally, the third trial would center on the RICO conspiracy charge (Count One), as well as the murders of Ella Palmer (Count Twelve), Shane McCuen (Counts Thirteen and Fourteen), and Quincy Battle (Counts Nineteen and Twenty).  (*Id.*).  The third trial would involve the remaining seven defendants: Ishmael Bowers, Joseph Hill, DeShawn Smith, Lance Reynolds, Andre M. Brown, Jonathan Holt, and Christopher V. Warton.[3]  (*Id.*).  Hill, Smith, Reynolds, and Brown each face the RICO conspiracy count.  (Doc. 300).  Bowers, Holt, and Wharton, on the other hand, do not.  (*Id.*).  Nevertheless, Bowers, Holt, and Wharton each face one count of murder in aid of racketeering (Counts Thirteen and Nineteen, respectively) with respect to the same alleged RICO enterprise that the Government must prove under Count One.  (*Id.*). The third trial also would include a number of other substantive counts applicable to the seven defendants specified above, including various firearm offenses (Counts Eighteen, Twenty-Three, Twenty-Six, Twenty-Eight, Thirty-Four, and Thirty-Six), drug trafficking offenses (Counts Seventeen, Twenty-One, Twenty-Two, Twenty-Four, Twenty-Five, Twenty-Seven, Thirty-Five, and Thirty-Seven), and one count of witness tampering (Count Thirty-Eight).  (*Id.*).

---

[3] The Government represents that Ishmael Bowers, Joseph Hill, and Christopher V. Wharton recently signed plea agreements and thus, presumably, will not proceed to trial.  (*See* Doc. 639).

The Government estimates that, as currently grouped, the first trial will last roughly ten to twelve weeks.  (Doc. 639).  The second and third trials, in turn, likely will last six to eight weeks each.  (*Id.*).  The Government also represents that although none of the named defendants has entered a guilty plea yet, four defendants (Bowers, Hill, Patterson, and Wharton) have signed plea agreements, and plea negotiations continue with at least eight other defendants.  (*Id.*).  Accordingly, for purposes of this joinder and severance analysis, the Court will presume that Bowers, Hill, Patterson, and Wharton will *not* proceed to trial.

## II.  STANDARD OF REVIEW

Together, Federal Rules of Criminal Procedure 8(b) and 14(a) govern the joinder and severance of defendants for trial.  Rule 8(b) provides that an indictment may charge two or more defendants together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense."  Fed. R. Crim. P. 8(b).  Joinder of a group of acts or transactions is proper when they are "logically interrelated" or form "part of a common scheme or plan."  *United States v. Beverly*, 369 F.3d 516, 533 (6th Cir. 2004); *see also United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987) (explaining that joinder is appropriate where charged offenses are "logically interrelated and involve overlapping proof").  As the Supreme Court has explained, "joint trials conserve [government] funds, diminish inconvenience to witnesses and public authorities, and avoid delays in brining those accused of crime to trial."  *United States v. Lane*, 474 U.S. 438, 449 (1986) (quotation omitted).  Furthermore, "[j]oint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability."  *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).  For these reasons, "[t]here is a preference in the federal system for joint trials."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Generally, "persons indicted together should be tried together." *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993). A different policy would pose problems for the criminal justice system, because "[s]eparate trials produce additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures." *See United States v. Carver*, 470 F.3d 220, 238 (6th Cir. 2006). Thus, under Rule 8(b), "the predominant consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." *Swift*, 809 F.2d at 322 (quotation omitted). The Sixth Circuit has indicated that Rule 8(b) "can, and should, be broadly construed in favor of initial joinder." *Id.* (quotation omitted). A motion for severance based on misjoinder alleges an error in the indictment, which this Court reviews de novo. *See United States v. Deitz*, 577 F.3d 672, 691-92 (6th Cir. 2009). If the Court finds that defendants were improperly joined under Rule 8(b), "[s]everance must be granted." *United States v. Lloyd*, 10 F.3d 1197, 1214 (6th Cir. 1993).

Rule 14, in turn, "comes into play only if joinder was initially proper under Rule 8 but a joint trial would prejudice one or more defendants." *Id.* at 1215. Under Rule 14, "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if it appears that a joint trial will prejudice the defendants. Fed. R. Crim. P. 14(a). Ordinary prejudice inherent in any joint trial does not, however, require severance. Rather, severance is required "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Thus, "a defendant seeking severance at trial bears a strong burden and must demonstrate substantial, undue, or compelling prejudice." *Carver*, 470 F.3d at 238 (quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999)).

Indeed, both before and especially after *Zafiro*, courts have refused to grant severance on the grounds that: (1) "a defendant might have a better chance for acquittal if tried separately"; (2) "the co-defendants had different levels of culpability than the defendant seeking severance"; (3) "the other defendants had a criminal record"; (4) "there might be hostility or a conflict of interest between the defendants"; or (5) "evidence may be admissible against one defendant but not against others." 1A Charles Alan Wright et al., *Federal Practice and Procedure*, § 223 (4th ed. 2015) (collecting cases); *United States v. Gardiner*, 463 F.3d 445, 473 (6th Cir. 2006) (same); *Lloyd*, 10 F.3d at 1215 (same). At bottom, "[t]he risk of prejudice will vary with the facts in each case," and "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539; *see also Swift*, 809 F.2d at 323 ("[A] jury is presumed capable of sorting out evidence and considering each count and each defendant separately."). Motions for severance under Rule 14 thus fall under the "sound discretion" of the district court. *Zafiro*, 506 U.S. at 541.

## III. ANALYSIS

Defendants argue that the indictments in this case constitute a misjoinder under Rule 8(b). Defendants further argue that standing trial together—even in three separate trials, as the Government has proposed—would result in undue prejudice under Rule 14(a). Defendants therefore request severance and individual trials or, in some instances, a more limited severance only from particular co-defendants. Given the number of motions, the considerable overlap between Defendants' arguments, and the fact that proper joinder under Rule 8(a) "is determined by the allegations on the face of the indictment," *see Deitz*, 577 F.3d at 691, the Court will address Defendants' misjoinder arguments collectively. The Court will, however, address Defendants' arguments for severance under Rule 14 on a topical and individual basis, as needed.

## A.  Joinder Was Proper Under Rule 8(b).

Seven of the defendants filed motions arguing that joinder was improper Under Rule 8(b) and that the Court should sever them from their co-defendants for the purposes of trial.[4]  This Court disagrees and finds, from the face of the indictments, that joinder was proper.  In short, all of the criminal activity alleged flows from the same overarching RICO conspiracy and thus stands logically interrelated or as part of a common scheme or plan.  Joinder was permissible— indeed favored—under these circumstances because joint trials will promote judicial efficiency and convenience.

Rule 8(b) authorizes joinder of each trial grouping.  The Superseding Indictment and the 2015 Indictment allege that Defendants participated in the same series of acts or transactions constituting an offense or offenses.  *See* Fed. R. Crim. P. 8(b).  In this case, the Government alleges that members and affiliates of the Short North Posse, or individuals who sought to gain entrance into the group, committed a number of crimes to aid the enterprise's racketeering activity, including murder, robbery, drug trafficking, firearm offenses, and witness intimidation. (Doc. 300).  Fourteen defendants face the same RICO conspiracy count for their involvement with the Short North Posse, and each of the six defendants who does *not* face the RICO conspiracy count is alleged to have committed at least one murder in furtherance of the same racketeering enterprise.  (*Id.*).  Thus, as this Court previously found when joining Case Numbers 2:14-cr-127 and 2:15-cr-080, Defendants' prosecution will "require an identical determination regarding the existence of the Short North Posse as an enterprise engaged in racketeering activity" and will "entail a substantial duplication of effort and expense by the Court and the parties" if adjudicated separately.  (Doc. 595).

---

[4] Wright (Doc. 670), Ussury (Doc. 664), Coates (Docs. 425 and 669), Johnson (Doc. 672), Smith (Doc. 668), Wilson (Doc. 661), and Robinson (Docs. 393 and 641), moved for severance under Rule 8(b).

Put simply, all of the criminal activity alleged in the indictments stands "logically interrelated" or as "part of a common scheme or plan," *see Beverly*, 369 F.3d at 533, and thus forms part of "the same series of acts or transactions," Fed. R. Crim. P. 8(b), because all of the activity relates to the charged RICO conspiracy.  As the Sixth Circuit has explained, "[j]oinder is permissible in a conspiracy count and substantive counts arising out of the conspiracy because the fundamental principle of a conspiracy charge is the agreement to a common plan or scheme to perpetuate some illegal activity." *United States v. Kelley*, 461 F.3d 817, 830 (6th Cir. 2006); *see also Beverly*, 369 F.3d at 533 (affirming joinder of series of robberies conducted during course of conspiracy, over defined period of time, and in similar manners); *Swift*, 809 F.2d at 322 (concluding that joinder was proper because "all of the counts were related and involved many of the same elements of proof").  Moreover, where, as here, an indictment alleges that *all* of the counts were overt acts taken in furtherance of the conspiracy, "[t]his provide[s] the necessary link to satisfy Rule 8(b)." *United States v. Carson*, 455 F.3d 336, 373 (D.C. Cir. 2006).

Defendants counter that joinder was improper because they were not all charged with the exact same offenses or, alternatively, because they were not all charged with RICO conspiracy. Defendants are wrong twice over.  Contrary to Defendants' first assertion, Rule 8(b) permits joinder even though some defendants may not have participated in every act charged in the indictments.  *See* Fed. R. Crim. P. 8(b) ("All defendants need not be charged in each count."); *Kelley*, 461 F.3d at 830 (finding joinder proper even though "both defendants did not participate in all acts detailed in the indictment" because "they both participated in at least one act in the series of acts that constituted the offense"); 1A Charles Alan Wright et al., *Federal Practice and Procedure*, § 144 n.37 (4th ed. 2015) ("Not all of the defendants charged as conspirators need to be charged on all of the substantive counts . . . .") (collecting cases).

10

Moreover, joinder remains proper even though six defendants were not charged with RICO conspiracy, because those defendants were charged with murder in aid of racketeering under 18 U.S.C. § 1959—"criminal conduct [that] stems from the same series of acts or transactions constituting [the RICO] offense." *See United States v. Neace*, No. 07-20400, 2008 WL 1735373, at *1, *3 (E.D. Mich. Apr. 14, 2008); *see also United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (finding defendant charged with bribery was properly joined in indictment charging other defendants with RICO conspiracy where bribery charge constituted predicate racketeering act). Where, as here, "a RICO count sufficiently alleges a pattern of racketeering activity," defendants charged in the RICO count can be joined in an indictment with defendants "who are only charged in the substantive counts relating to the racketeering activity." *United States v. Triumph Capital Grp., Inc.*, 260 F. Supp. 2d 432, 438 (D. Conn. 2002).

For example, in *Neace*, the court found joinder proper for members of the American Outlaws Association ("AOA") and a *prospective* member who allegedly committed acts of violence to gain entry into the AOA, even though he was not charged in the overarching conspiracy. *See Neace*, 2008 WL 1735373, at *2-3. There, the court concluded that joinder is proper "so long as [the] indictments indicate all the acts charged against each joined defendant (even separately charged substantive counts) are charged as racketeering predicate acts or as acts undertaken in furtherance of, or in association with a commonly charged RICO enterprise or conspiracy." *Id.* at *3 (quotation omitted). Put differently, "even if a defendant is not named" in a RICO conspiracy count, "he may be charged in a separate count . . . if he is alleged to have participated in the same series of acts or transactions that constituted the conspiracy . . . despite the fact that his participation may have been too limited to permit his being included as a co-conspirator." *United States v. Castellano*, 610 F. Supp. 1359, 1396-97 (S.D.N.Y. 1985).

11

The same logic applies here. The murder counts that Bowers, Wilson, Robinson, and Patterson (who were *not* charged in Count One) face are all alleged as overt acts taken in furtherance of the commonly charged RICO conspiracy.[5] Similarly, the murder counts and remaining substantive offenses that Holt and Wharton face are all alleged as overt acts taken in furtherance of the same RICO conspiracy.[6] Thus, even though these six defendants were not charged under the RICO conspiracy count, their joinder remains proper.

Apart from finding no support in the text of Rule 8(b) or the cases interpreting it, Defendants' requests for severance would create significant inefficiencies for the Court and other trial participants, including juries and witnesses. *See Carver*, 470 F.3d at 238. Were the Court to preside over a dozen individual trials in this matter, as Defendants propose, the Government would need to present similar (or identical) evidence about the existence of the Short North Posse and the activities of its members and associates in each trial—even in trials that allege only murder in aid of racketeering and not RICO conspiracy. *See* 18 U.S.C. § 1959(a) (requiring proof that murder was committed for purpose of gaining entrance to or maintaining or increasing position in "an enterprise engaged in racketeering activity"). This process would undermine the "predominant consideration" in any joinder analysis—namely, "whether joinder would serve the goals of trial economy and convenience." *Swift*, 809 F.2d at 322. For all these reasons, the Court finds joinder proper under Rule 8(b).

---

[5] Bowers faces murder charges under Counts Thirteen and Fourteen, which correspond to Overt Act Number Fifty-Three. (Doc. 300). Wilson and Robinson face murder charges under Counts Five and Six, which correspond to Overt Act Number Forty-Five. (*Id.*) Patterson faces murder charges under Counts Fifteen and Sixteen, which correspond to Overt Act Number Fifty-Five. (*Id.*)

[6] Holt and Wharton face murder charges under Counts Nineteen and Twenty, which correspond to Overt Act Number Sixty-Eight. (*Id.*) The remaining eight substantive offenses that Holt and Wharton face also correspond to specific overt acts alleged in the Superseding Indictment. Counts Seventeen and Eighteen correspond to Overt Act Number Sixty-Seven; Counts Twenty-Two and Twenty-Three correspond to Overt Act Number Seventy-Nine; Counts Twenty-Five and Twenty-Six correspond to Overt Act Number Eighty-Five; and Counts Twenty-Seven and Twenty-Eight correspond to Overt Act Number Ninety. (*Id.*)

**B. Defendants Have Not Established That Severance Is Required Under Rule 14(a).**

Twelve of the defendants argue that, even if they were properly joined under Rule 8(b), the Court nevertheless should order severance under Rule 14(a) due to the potential prejudice of standing trial together.[7]  Collectively, Defendants argue for severance under four broad headings: (1) the potential for "spillover" evidence from their co-defendants' charges; (2) the purported risks associated with "mega-trials"; (3) the possibility that certain defendants will present antagonistic defenses; and (4) alleged Confrontation Clause issues concerning the admission of their co-defendants' out-of-court statements.  As explained below, none of these arguments requires severance, at least at this stage of the proceedings.

### 1. "Spillover" Evidence

Defendants' primary severance argument—framed in slightly different terms in the pending motions—centers on the alleged disparity in the quantity and quality of evidence likely to be presented at trial.  Defendants contend that this potential for prejudicial "spillover" evidence from their co-defendants' charges warrants severance.  In essence, Defendants argue that the jury might convict them not on the basis of the evidence unique to *each* defendant, but, rather, by imputing guilt to *all* based on the conduct of, and evidence against, their co-defendants.  (*See, e.g.*, Doc. 641 (complaining of the "prejudicial evidentiary spillover" that allegedly will flow from "[t]he number and severity of the charges against Robinson's co-defendants"); Doc. 666 ("[T]he number and severity of the charges against Mr. Harris's co-defendants will, without question, create prejudicial evidentiary spillover."); Doc. 669 ("[S]everance is appropriate to avoid the spillover prejudice resulting from the duration and severity of [Coates's] co-defendants' charges.")).

---

[7] Green (Doc. 667), Wright (Doc. 670), Harris (Doc. 666), Wilson III (Doc. 562), Ussury (Doc. 664), Coates (Docs. 425 and 669), Johnson (Doc. 672), Smith (Doc. 668), Reynolds (Doc. 671), Wilson (Doc. 661), Robinson (Docs. 393 and 641), and Holt (Doc. 436), moved for severance under Rule 14(a).

To be sure, the Supreme Court has acknowledged that juries *might* not be able to form a reliable judgment about guilt or innocence "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *See Zafiro*, 506 U.S. at 539. The Supreme Court also has acknowledged that "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Id.* Nevertheless, it is equally "well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate cases." *Id.* at 540. Further, even where there is some risk of prejudice, "it is [often] of the type that can be cured with proper [limiting] instructions," which "juries are presumed to follow." *See id.* (quotation omitted). For these reasons, "spillover of evidence from one case to another [generally] does not require severance." *United States v. Dimora*, 750 F.3d 619, 631 (6th Cir. 2014) (quotation omitted).

The Sixth Circuit repeatedly has rejected the same argument that Defendants make here by finding that a likely disparity in the quantity and quality of evidence against co-defendants does not merit separate trials. *See, e.g.*, *Gardiner*, 463 F.3d at 473 (rejecting argument that "because the overwhelming evidence at trial pertained [only] to [co-defendant's] case," severance was required; "[this] is not enough to show specific, actual or compelling prejudice"); *United States v. Welch*, 97 F.3d 142, 147-48 (6th Cir. 1996) (holding that severance properly was denied in case in which defendant was tried with multiple co-defendants and was charged in only three of twenty-nine counts); *United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1987) ("[A] defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him. . . . The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple defendant cases.").

14

Defendants overlook this line of cases and the Sixth Circuit's view that "disparity of evidence is generally not enough to cause the granting of a separate trial." *Harris*, 9 F.3d at 501. Defendants also overlook that, in truth, this Court already has *granted* multiple severances by splitting the defendants into three separate trial groupings (despite not being required to do so), thus drastically reducing any potential "spillover" of evidence. At present, and excluding those who have signed plea agreements, the defendants are slated to stand trial in groups of seven, five, and four, respectively. (Doc. 639). The first trial will involve sixteen counts, the second trial will involve five counts, and the third trial will involve eighteen counts. (*Id.*; Doc. 300).

While recognizing that "the existence of a 'spill-over' or 'guilt transference' effect turns in part on whether the number of conspiracies and conspirators involved [are] too great for the jury to give each defendant the separate and individual consideration of the evidence . . . to which he is entitled," the Sixth Circuit has rejected severance arguments based on even *greater* numbers of defendants and charges. *United States v. Gallo*, 763 F.2d 1504, 1526 (6th Cir. 1985) (quotation and ellipsis omitted) (upholding joint trial for five RICO conspiracy defendants facing fifty-eight counts); *see also United States v. Driver*, 535 F.3d 424, 426-28 (6th Cir. 2008) (upholding joint trial for thirteen RICO conspiracy defendants facing forty counts); *United States v. Warner*, 971 F.2d 1189, 1191, 1196 (6th Cir. 1992) (upholding joint trial of four conspiracy defendants facing thirty-four counts); *United States v. Sutton*, 642 F.2d 1001, 1005, 1036-37 (6th Cir. 1980) (en banc) (upholding joint trial of nine RICO conspiracy defendants facing 268 counts after partial severance). So too have other circuits. *See, e.g.*, *United States v. Lee Stoller Enters., Inc.*, 652 F.2d 1313, 1316, 1319 (7th Cir. 1981) (four RICO conspiracy defendants and twenty-six counts); *United States v. McLaurin*, 557 F.2d 1064, 1066, 1075 & n.1 (5th Cir. 1977) (fifteen RICO conspiracy defendants—some sharing the same name—facing five counts).

15

True enough, the number of defendants and counts may not tell the whole story in terms of potential prejudice from "spillover" evidence.  *See Gallo*, 763 F.2d at 1526 (noting that the existence of prejudicial spillover turns "in part" on number of conspirators and counts). Defendants thus make an alternative argument that focuses on the alleged "disparity between the duration and severity of criminal activity between the co-defendants," (Doc. 641), and the risk of prejudice from "the varying degrees of criminal culpability among the various co-defendants," (Doc. 666).  The Court is not persuaded.  This is not a situation where defendants who have "*markedly* different degrees of culpability" face trial together in a complex case.  *See Zafiro*, 506 U.S. at 539 (emphasis added).  Far from it.   Nine of the twelve defendants who moved for severance face the RICO conspiracy count, which, if true, shows an agreement to form a criminal enterprise that may have committed a string of murders, robberies, and other crimes of violence. (*See* Doc. 300).  Ten of twelve moving defendants are charged with at least one (if not several) substantive murder counts.  (*Id.*).  And the three moving defendants who do not face the RICO conspiracy count still face two counts of murder each, including a charge of murder in aid of racketeering for their alleged involvement with the Short North Posse.  (*Id.*).  This simply is not a case where the defendants bear "markedly" different degrees of culpability meriting severance.

Setting aside the allegations and whether Defendants, in fact, possess different criminal culpability, Defendants' alternative argument fails for an independent reason:

> Defendants here, as in most RICO cases, were alleged to have committed different predicate crimes.  ***But in a trial on RICO charges, a particular defendant may be the victim of spillover testimony regarding other, more violent or heinous, predicate crimes.***  This can happen because the specific purpose of the substantive provisions of RICO is to tie together diverse parties and crimes. ***Under RICO, it is irrelevant that each defendant participated in the enterprise's affairs through different and unrelated crimes.***

*Lee Stoller Enterprises*, 652 F.2d at 1319 (emphasis added) (affirming denial of severance).

The same holds true in non-RICO cases as well; the possibility that a defendant may suffer some disadvantage from being tried with individuals who are more culpable or who more frequently engaged in other criminal activity does not, standing alone, justify separate trials. *See Carver*, 470 F.3d at 238 (affirming denial of motion for severance brought by defendant in drug trafficking case who was tried with co-defendants who engaged in larger drug transactions and threatened violence); *Davis*, 177 F.3d at 557-58 (affirming denial of motion for severance from defendant who "was charged with only one count of possession of a relatively small quantity of drugs" even though he was tried "with individuals charged with more serious offenses," including "violent conduct directed at law enforcement"); *Gallo*, 763 F.2d at 1527 (affirming denial of motion for severance despite admission of "highly inflammatory testimony concerning . . . gruesome and brutal murders" with which defendant was not charged).

In sum, and with a keen eye on the fact that "juries are presumed capable of following instructions regarding the sorting of evidence and the separate consideration of multiple defendants," *United States v. Mays*, 69 F.3d 116, 120 (6th Cir. 1995), the Court finds that Defendants have not demonstrated "substantial, undue, or compelling prejudice" stemming from any "spillover" of evidence, *Carver*, 470 F.3d at 238.  Accordingly, the Court will not grant Defendants' motions for severance on this basis.

### 2. *"Mega-trials"*

Defendants next argue that so-called "mega-trials"—those involving "large cases with numerous defendants and evidence spanning a lengthy period of time"—require severance. (*See, e.g.*, Doc. 666, 667, and 672).  Defendants look to support from a decision from the Ninth Circuit.  *See United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000).

Defendants miss three key points.  *First*, in *Baker*, the Ninth Circuit *affirmed* the district court's denial of motions for severance in a case far more expansive the three trials at issue here. *Id.* at 1389 ("We hold that the district court did not abuse its broad discretion in denying Appellants' motions for severance.").  The consolidated *Baker* Trial involved fifteen defendants (twice as many as will stand trial together here), facing forty-four counts (again, more than twice as many at stake in any trial here), stemming from 2,000 narcotics transactions that occurred over the course of eleven years, in a trial that lasted over sixteen months (five times longer than the longest trial anticipated here).  *Id.* at 1386.  Nevertheless, the Ninth Circuit affirmed the lower court's decision to try the defendants together after finding that the district judge made "remarkably careful rulings" throughout the proceedings and "gave great weight to the defendants' rights . . . [in] ensur[ing] that the trial was fair." *Id.* at 1389.  *Baker*'s holding thus undercuts Defendants' position that they will be unduly prejudiced by standing trial together. Anything else from *Baker* consists of dicta, which the Ninth Circuit itself acknowledged.  *Id.* ("We therefore find it appropriate to set forth our concerns regarding trials of this magnitude and some standards by which to measure the viability of such trials in the future.").

*Second*, Defendants' motions for severance fail even under the non-binding "standards" proposed in *Baker*, because none of the trials contemplated here qualifies as a "mega-trial" warranting special consideration.  *See id.* at 1392 (adopting Second Circuit's recommendations that "the judge should require the prosecution to justify its conclusion that a joint trial serves the ends of justice" when the estimated length of trial "exceeds four months" and should make an "especially compelling" showing for trials that involve "more than ten defendants").  Here, the Government estimates the longest trial will last, at most, twelve weeks and will involve a total of seven defendants.  (Doc. 639).  Thus, *Baker* is inapposite.  *See Baker*, 10 F.3d at 1392.

*Third*, and most importantly, the Sixth Circuit has declined to adopt the presumption against "mega-trials" that the *Baker* Court embraced and that Defendants now propose. *United States v. Tocco*, 200 F.3d 401, 413 n.5 (6th Cir. 2000) ("This circuit, however, has not adopted such a policy, and we decline to do so in this case."). Instead, the Sixth Circuit "adhere[s] to the strong policy in favor of joint trials," even in large and complex organized crime cases. *Id.* (quotation omitted). For example, in *Tocco*, the Sixth Circuit affirmed the denial of a motion for severance in a RICO conspiracy prosecution in which six defendants took part in a three-month trial. *Id.* at 410, 413-14. Likewise, and as described in Section III.B.1, *supra*, the Sixth Circuit repeatedly has blessed joint trials in other large, complex cases.

None of this is to suggest that large, complex, and potentially lengthy trials do not deserve a closer look upon a motion for severance. The Ninth Circuit's concerns over the prejudice that may result from so-called "mega-trials" ring true in the abstract. Trial participants of every kind may suffer fatigue, become overwhelmed, and make mistakes in the course of such a trial—some mistakes too fundamental to ignore. *See Baker*, 10 F.3d at 1390-92 (describing the "staggering hardships" that befall all parties to a trial that involves dozens of defendants and lasts well over a year). These very concerns motivated this Court to request a multi-trial plan from the Government in the first instance—one that would break a potentially unmanageable and unduly prejudicial trial into more manageable pieces. Defendants, however, have failed to show that the resulting trial plan will "compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence," *see Zafiro*, 506 U.S. at 539, at least insofar as they rely on a presumption against "mega-trials" that the Sixth Circuit has declined to adopt and that would not apply even in those circuits that have adopted such a presumption. Accordingly, the Court will not grant Defendant's motions for severance on this basis.

19

### 3. Mutually Antagonistic Defenses

Five defendants argue that severance is necessary because of the likelihood of mutually antagonistic defenses at trial.[8]  Defendants fail, however, to identify a set of antagonistic defenses that are "irreconcilable" and that would lead "the jury [to] unjustifiably infer that this conflict alone demonstrates that both are guilty."  *See United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014) (quotation omitted).

Mutually antagonistic defenses typically arise "when one person's claim of innocence is predicated solely on the guilt of a co-defendant," *Harris*, 9 F.3d at 501—*i.e.*, "when two defendants both claim they are innocent and each accuses the other of the crime," *Zafiro*, 506 U.S. at 540.  The Supreme Court has held that these defenses are not prejudicial *per se*. *Zafiro*, 506 U.S. at 538.  Thus, "[h]ostility among defendants or the attempt of one defendant to save himself by inculpating another does not [always] require that defendants be tried separately."  *Fields*, 763 F.3d at 457 (quotation omitted); *see also United States v. Crotinger*, 928 F.2d 203, 206 (6th Cir. 1991) ("The mere fact that each defendant 'points the finger' at his co-defendant is insufficient; a defendant seeking to sever a trial must show that antagonistic defense will confuse or mislead the jury.").  Instead, "the burden is on Defendants to show that [1] an antagonistic defense would present a conflict so prejudicial that defenses are irreconcilable, and [2] the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."  *Fields*, 763 F.3d at 457 (quotation omitted).  It is not enough for the defendants to "contend that the very nature of their defenses, without more, prejudiced them."  *See Zafiro*, 506 U.S. at 540.  Rather, defendants must "articulate . . . specific instances of prejudice" that cannot be cured "with proper instructions."  *Id.*

---

[8] Harris (Doc. 666) is slated for the first trial.  Green (Doc. 667), Wright (Doc. 670), and Johnson (Doc. 672) are slated for the second trial.  Holt (Doc. 431) is slated for the third trial.  (*See* Doc. 639).

Defendants come up short under these standards.  Green, Wright, and Johnson refer to the possibility of antagonistic defenses only in the most general terms.  (Doc. 667 ("[A] joint trial will prejudice Mr. Green because of the likelihood of mutually antagonistic defenses."); Doc. 670 ("There is a strong probability that each defendant will present defenses that are in direct opposition to the other. . . . [C]ounsel anticipates each defendant will present defenses such that the acceptance of one party's assertion precludes or compromises the acquittal of another."); Doc. 672 ("[A] joint trial on all counts will prejudice Mr. Johnson because of the likelihood of mutually antagonistic defenses.")).  This is precisely the sort of generalized speculation that the Supreme Court found lacking in *Zafiro*.  506 U.S. at 539-40.

Holt at least describes how mutually antagonistic defenses might arise at trial.  (Doc. 436 ("[Holt] believes that the Government intends to illicit evidence at trial that there may have been more than one shooter involved in the murder of Quincy Battle.  Defendant has maintained that he was not the shooter, as have the other defendants . . . . These defenses are antagonistic.")).  But Holt does nothing to show how these defenses might confuse or mislead the jury, as required to obtain severance.  Indeed, the Sixth Circuit has upheld joint trials on several occasions where (as anticipated here) two or more co-defendants blamed one another for the crime in question but failed to show how those defenses would confuse the jury.  *See, e.g.*, *Crotinger*, 928 F.2d at 206 (affirming joint trial where defendants blamed one another regarding the ownership of suitcases stuffed with marijuana; "Because a jury could reasonably be expected to sort out the evidence applicable to whether [passenger], [driver][,] or someone else owned the suitcases containing the marijuana, the trial court did not abuse its discretion in not severing the trial."); *United States v. Vinson*, 606 F.2d 149, 154 (6th Cir. 1979) (affirming joint trial for two defendants who "sought to cast the blame on the other" for extortion charge).  The same goes for Holt.

Harris, in turn, contends that "[u]pon information and belief," he "anticipates" that one of his co-defendants, Robert B. Ledbetter, will defend against Count Four for the murder of Alan Johnson by blaming Harris for the victim's death. (Doc. 666). The Government has not charged Harris with Johnson's murder. (*See* Doc. 300 (charging *only* Ledbetter with Johnson's murder)). Harris therefore maintains that he "will have to combat not only the Government's allegations, but also the allegations made by Mr. Ledbetter" regarding "a fifth murder on top of the four already accused by the Government." (Doc. 666). Harris, however, similarly fails to show how Ledbetter's anticipate defense might confuse or mislead the jury, as required to obtain severance. *See Vinson*, 606 F.2d at 154 ("Absent some indication that the antagonism between co-defendants misled or confused the jury, the mere fact that co-defendants blame each other does not compel severance."). This alone sinks Harris's bid for severance based on mutually antagonistic defenses. *See United States v. Weiner*, 988 F.2d 629, 634 (6th Cir. 1993).

Finally, none of the defendants has shown that "less drastic measures, such as limiting instructions," will fail to cure any potential risk of prejudice. *See Zafiro*, 506 U.S. at 539-40 (holding that instructions from district court regarding Government's burden of proof as to each defendant and the importance of each defendant having his or her case determined individually "sufficed to cure any possibility of prejudice" from antagonistic defenses); *see also, e.g.*, *Fields*, 763 F.3d at 458 (same); *United States v. Pierce*, 62 F.3d 818, 830-31 (6th Cir. 1995) (same). At this stage of the proceedings, and without any explanation as to how the juries in these cases might be confused or misled by Defendants' anticipated defenses, the Court will not resort to the "drastic" measure of severing Defendants' trials any further. The Court simply has no reason to conclude that the juries will be incapable of rendering reliable judgments about guilt and innocence, especially once properly instructed. *See Zafiro*, 506 U.S. at 539-40.

### 4. Confrontation Clause Issues

Finally, eight of the defendants argue that severance is required to avoid running afoul of the Confrontation Clause of the Sixth Amendment.[9]  Defendants maintain that the Government's anticipated use of their co-defendants' incriminating out-of-court statements would violate their constitutional rights as set forth in *Bruton v. United States*, 391 U.S. 123 (1968), and *Crawford v. Washington*, 541 U.S. 36 (2004).  As explained below, Defendants are mistaken.

In *Bruton*, the Supreme Court held that an out-of-court confession made by one defendant that implicates another defendant cannot be introduced in a joint trial where the declarant does not take the stand.  391 U.S. at 137.  The introduction of such a confession violates the accused's Sixth Amendment right to confront the witnesses against him through cross-examination.  *Id.* This rule of constitutional law applies notwithstanding any limiting instruction to the jury to consider the confession only against the defendant who made it.  *Id.*  Accordingly, under *Bruton*, "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand."  *Richardson*, 481 U.S. at 206.  District courts can, however, take measures short of severance to ensure that the admission of a co-defendant's out-of-court confession does not violate the Confrontation Clause.  These steps include redaction of the confession to avoid mention or obvious implication of the non-confessing defendant coupled with appropriate limiting instructions to the jury.  *See id.* at 211; *United States v. Vasilakos*, 508 F.3d 401, 407-08 (6th Cir. 2007).  Such measures satisfy the Sixth Amendment even if a jury could conclude that the declarant's confession incriminates one or more of his co-defendants "by linking the statement[s] to other evidence" adduced at trial. *See United States v. Ford*, 761 F.3d 641, 654 (6th Cir. 2014).

---

[9] Green (Doc. 667), Wright (Doc. 670), Harris (Doc. 666), Wilson III (Doc. 562), Coates (Doc. 669), Johnson (Doc. 672), Reynolds (Doc. 671), and Robinson (Docs. 225 and 393), all moved for severance due to potential Confrontation Clause violations.

In *Crawford*, the Supreme Court clarified the scope of the Confrontation Clause and held that it presents an absolute bar to the admission of out-of-court "testimonial statements" unless the person making the statement was (or now is) subject to cross-examination. 541 U.S. at 68. *Crawford* and a follow-on case, *Davis v. Washington*, 547 U.S. 813 (2006), marked a sea change in Sixth Amendment jurisprudence by making clear that the Confrontation Clause protects *only* against "testimonial" statements. *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007); *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009). In the wake of *Crawford* and *Davis*, the Sixth Circuit has explained that "[b]ecause it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." *Johnson*, 581 F.3d at 325; *see also United States v. Pugh*, 273 F. App'x 449, 455 (6th Cir. 2008) ("Because the statement at issue is nontestimonial in nature . . . an analysis under *Bruton* is unnecessary."); *United States v. Figueroa-Cartagena*, 612 F.3d 69, 85 (1st Cir. 2010) (same); *United States v. Dale*, 614 F.3d 942, 955 (8th Cir. 2010) (same).

The implications of *Crawford* for the *Bruton* rule are two-fold. First, if a defendant's out-of-court statement inculpating a co-defendant is *not* testimonial, then *Bruton* does not apply. *Pugh*, 273 F. App'x at 454-55; *Figueroa-Cartagena*, 612 F.3d at 85. Only the Federal Rules of Evidence govern the admission of such non-testimonial statements. *See United States v. Arnold*, 486 F.3d 177, 192-93 (6th Cir. 2007) (en banc). Second, if a defendant's out-of-court statement *is* testimonial, then the Court must conduct a full *Bruton* analysis to determine whether the statement implicates a co-defendant, whether the declarant will testify, and, if not, whether the statement can be redacted appropriately for use in a joint trial. *See United States v. Crowe*, Nos. 13-1892/2199, 2015 WL 3559202, at *3 (6th Cir. June 8, 2015). With this analytical framework in mind, the Court turns to Defendants' arguments for severance under the Confrontation Clause.

24

### a. Christopher A. Harris (Trial I)

Harris moves for severance due to potential Confrontation Clause violations without identifying a single out-of-court statement from any co-defendant that might incriminate him. (Doc. 666 ("[S]hould the Government or any defendant seek to introduce any out-of-court inculpatory statements uttered by any of the Co-Defendants, the admission of these statements would violate Mr. Harris's constitutional right to confrontation . . . .")). Harris cannot, however, obtain severance merely because he sees unconstitutional shadows lurking behind every corner. *See United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) (requiring a showing of "compelling, specific, and actual prejudice" to obtain severance). In the absence of something, *anything*, indicating that: (1) a co-defendant; (2) who made an out-of-court testimonial statement; (3) that facially implicates Harris; (4) will refuse to take the stand at trial, Harris's motion fails. *See Richardson*, 481 U.S. at 207.

### b. Robert L. Wilson III and Clifford L. Robinson (Trial I)

Wilson III moves for severance under *Bruton* and *Crawford* due, in part, to out-of-court statements from Lance Green and Troy Patterson. (Doc. 562). His arguments are misplaced with respect to Green and Patterson because he is not slated to stand trial with either defendant. Green is scheduled to stand trial in Trial II, and Patterson has signed a plea agreement, presumably removing him from the first trial grouping. (Doc. 639). Accordingly, Wilson III's severance argument is moot with respect to those two co-defendants.

Wilson III and Robinson both contend that they should not stand trial together with co-defendant Rastaman Wilson due to a tape-recorded conversation that the latter had with a confidential informant in April 2012. (*See* Docs. 225, 393, and 562). Wilson III and Robinson believe that this conversation incriminates them in the charged RICO conspiracy.

Defendants' arguments fail, however, because Rastaman Wilson's conversation with the confidential informant does not qualify as a "testimonial" statement under *Crawford* and its progeny. Thus, his conversation does not implicate the Confrontation Clause. In *Crawford*, the Supreme Court held that the Confrontation Clause presents an absolute bar to the admission of out-of-court "testimonial statements" unless the person making the statement was (or now is) subject to cross-examination. 541 U.S. at 59, 68. But the *Crawford* Court left "for another day" the task of determining what constitutes a "testimonial" statement for these purposes. *Id.* at 68. In the wake of *Crawford*, the Sixth Circuit asks whether the declarant "intend[ed] to bear testimony against the accused" to determine whether statements are testimonial. *United States v. Collins*, --- F.3d ---, --- (6th Cir. 2015) (quotation omitted). This analysis, "in turn, depends on whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Id.* (quotation omitted).

Where, as here, the declarant makes unwitting statements to a confidential informant, those statements are not "testimonial" within the meaning of *Crawford*'s Confrontation Clause rubric. *Johnson*, 581 F.3d at 325 (collecting cases); *see also, e.g.*, *United States v. Watson*, 525 F.3d 583, 589 (7th Cir. 2008) ("[A] statement unwittingly made to a confidential informant and recorded by the government is not 'testimonial' for Confrontation Clause purposes."); *United States v. Saget*, 377 F.3d 223, 229 (2d Cir. 2004) ("[A] declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of *Crawford*."). Accordingly, Wilson's statements to the confidential informant do not implicate the Confrontation Clause, *see Arnold*, 486 F.3d at 192-93, thereby "eliminat[ing] any need to analyze the admissibility of the tape-recording under the rule established in *Bruton*," *see Johnson*, 581 F.3d at 325; *see also Pugh*, 273 F. App'x at 455.

Moreover, even if Rastaman Wilson's conversation with the confidential informant somehow qualified as a "testimonial" statement under *Crawford* and its progeny, Wilson III and Robinson still fail to demonstrate a *Bruton* violation requiring severance. For one thing, it is not clear whether Rastaman Wilson intends to testify at trial. If Wilson *does* take the stand and is subject to cross-examination, the admission of his statements to the confidential informant poses no Sixth Amendment problem under *Bruton*. *See Richardson*, 481 U.S. at 206 ("[W]here two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other *unless the confessing defendant takes the stand*." (emphasis added)); *Nelson v. O'Neil*, 402 U.S. 622, 627 (1971) ("The Constitution as construed in *Bruton*, in other words, is violated only where the out-of-court hearsay statement is that of a defendant who is unavailable at the trial for 'full and effective' cross-examination."). For another, the Supreme Court has explained that district courts can take measures short of severance to ensure that the admission of a co-defendant's out-of-court statement does not cause Confrontation Clause problems. Such steps include redaction of the confession to avoid mention or obvious implication of the non-confessing defendants coupled with appropriate limiting instructions to the jury. *See Richardson*, 481 U.S. at 211; *Vasilakos*, 508 F.3d at 407-08. These measures would satisfy the Sixth Amendment even if a jury could conclude that Rastaman Wilson's statements to the confidential information incriminate one or more of his co-defendants "by linking the statement[s] to other evidence" adduced at trial. *See Ford*, 761 F.3d at 654. As such, Wilson III and Robinson have not shown a *Bruton* problem requiring severance, even assuming, for the sake of argument, that Rastaman Wilson's statements were testimonial in the first instance—an assumption that this Court declines to make given *Johnson*, *Watson*, *Saget*, and similar cases regarding unwitting statements made to confidential informants.

27

### c.  Lance A. Green, Allen L. Wright, Thomas E. Coates, and Freddie K. Johnson (Trial II)

Green, Wright, Coates, and Johnson move for severance without identifying a single out-of-court statement from any co-defendant that might incriminate them.  (Doc. 687 ("[S]hould the Government or any defendant seek to introduce any out-of-court statements uttered by any of the Co-Defendants, the admission of these statements would violate Mr. Green's constitutional right to confrontation . . . ."); Doc. 670 ("[I]nformation has been disclosed through discovery that some of these defendants have made statements implicating themselves, or made statement[s] attempting to implicate Mr. Wright.  Should the Government elect to utilize these statements, and should the declarants elect not to testify, then Mr. Wright's confrontation is irreparably compromised."); Doc. 669 ("Should the Government or any defendant seek to introduce any out-of-court inculpatory statements uttered by any of the co-defendants, the admission of these statements would violate Mr. Coates' constitutional right to confrontation . . . ."); Doc. 672 ("[S]hould the Government or any defendant seek to introduce any out-of-court inculpatory statements uttered by any of the co-defendants, the admission of these statements would violate Johnson's constitutional right to confrontation . . . .")).

Like Harris, these defendants cannot obtain severance without first pointing to some out-of-court statement for the Court to consider.  In the absence of such a statement, the Court cannot determine: (1) whether the statement is testimonial and, therefore, whether it implicates the Confrontation Clause; (2) *if* testimonial, whether the statement facially implicates a co-defendant; (3) *if* testimonial *and* facially inculpatory, whether the declarant who made the statement intends to testify at trial, thereby obviating any Confrontation Clause problems; and (4) *if not*, whether the Court can invoke a less drastic measure than severance to cure any potential *Bruton* problems.  Accordingly, Defendants' speculative arguments fall short.

### *d.  Lance Reynolds (Trial III)*

Finally, Reynolds moves for severance due to the potential admission of three out-of-court statements from his co-defendants: (1) Jonathan Holt's pre-indictment interview with law enforcement, in which he implicated Reynolds as an accomplice in the murder of Quincy Battle; (2) Andre Brown's proffer to law enforcement, in which he told investigators that a *different* co-defendant, Ishmael Bowers, admitted his personal involvement in Battle's murder; and (3) DeShawn Smith's statement to a potential witness who claims that Smith admitted that he shot Shane McCuen in March 2008.  With respect to the third statement (Smith's admission), Reynolds notes that the Government's discovery disclosures contain a security camera recording of him and Smith together in a nearby bar shortly before the McCuen shooting.

### *i.  Johnathan Holt's Pre-Indictment Interview*

Holt's pre-indictment interview with law enforcement officials constitutes a "testimonial" statement within the meaning of *Crawford*, thereby implicating the Confrontation Clause and potential *Bruton* concerns.  *See Crawford*, 541 U.S. at 68 ("Whatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."); *United States v. Cromer*, 389 F.3d 662, 674 (6th Cir. 2004).  But Reynolds has not submitted Holt's statements to the Court for consideration of whether they facially implicate Reynolds.  Nor is it clear that Holt will testify at trial, and "the *Bruton* rule applies only to a *non-testifying* codefendant's statements."  *United States v. Floyd*, No. 2:14-CR-126, 2015 WL 2194790, at *9 (S.D. Ohio May 11, 2015).  For these reasons, "the *potential* for a Confrontation Clause violation is insufficient to justify severance."  *See id.* (emphasis added).  And, as explained above, even if there is a *Bruton* issue with respect to Holt's statements, other, less drastic measures may suffice to comply with the Sixth Amendment.  *Id.*

*ii.  Andre Brown's Proffer*

Brown's proffer to law enforcement officials likewise qualifies as a "testimonial" statement, thus potentially implicating the *Bruton* rule.  *See Crawford*, 541 U.S. at 68; *Cromer*, 389 F.3d at 674 ("Statements made to the authorities who will use them in investigating and prosecuting a crime, made with the full understanding that they will be so used, are precisely the sort of accusatory statements the Confrontation Clause was designed to address." (quotation and ellipsis omitted)).  Reynolds does not allege that Brown's proffer incriminates him at all, thus dooming any argument under *Bruton*.  *See Crowe*, 2015 WL 3559202, at *3 ("[E]ven if [co-defendant's] lawyer's statement had been testimony, it would not trigger *Bruton* because the statement did not implicate [defendant] either explicitly or implicitly.").  Instead, Reynolds alleges that Brown told law enforcement that a *different* co-defendant, Ishmael Bowers, admitted to his involvement in the 2010 murder of Quincy Battle.

Thus, Reynolds makes an alternative argument for severance that goes something like this: (1) Ishmael Bowers might testify against him at trial; (2) if Bowers does testify against Reynolds, Reynolds anticipates cross-examining him with respect to the statements that he made to Brown regarding the Battle murder; (3) in the event Bowers denies or contradicts those statements, Reynolds will need to call Brown as an exculpatory rebuttal witness; and (4) if this highly speculative chain of events does play out, it could pose a problem if Brown, in turn, exercises his constitutional right to remain silent, thereby eliminating his availability as an exculpatory rebuttal witness for Reynolds.  (*See* Doc. 671).  Reynolds cites *United States v. DiBernardo*, 880 F.2d 1216, 1226 (11th Cir. 1989), for support.  There, the Eleventh Circuit noted that "a motion to sever based on the need for the exculpatory testimony of a co-defendant implicates the constitutional rights of the movant."  *Id.*

The Sixth Circuit employs a "stringent test" for resolving motions to sever based on the unavailability of a co-defendant's exculpatory testimony. *Causey*, 834 F.2d at 1287. Such motions "must be accompanied by more than a basic, unsupported contention that a separate trial would afford the defendant exculpatory testimony." *Id.* Instead, the movant must demonstrate "(1) a bona fide need for the testimony, (2) the substance of the testimony, (3) its exculpatory nature and effect, and (4) that the codefendant will in fact testify if the cases are severed." *Id.* (quotation omitted). Here, Reynolds has failed to demonstrate a bona fide need for Andre Brown's testimony, because Reynolds has no way of knowing if Bowers will testify at trial and, if so, whether his testimony will inculpate Reynolds in Battle's murder. Nor, for that matter, has Reynolds described with particularity how Brown might testify or what impact his testimony would have vis-à-vis Reynolds's prosecution. Moreover, Reynolds has failed to demonstrate that Brown would testify even if their trials were severed. Under these circumstances, severance is not warranted. *See id.*; *see also United States v. Cobleigh*, 75 F.3d 242, 248 (6th Cir. 1996).

### *iii. DeShawn Smith's Statement*

Finally, Reynolds describes a law enforcement interview of a witness who stated that co-defendant DeShawn Smith admitted that he shot Shane McCuen. This statement too qualifies as "testimonial" within the meaning of *Crawford*, thus implicating the Confrontation Clause. *See Crawford*, 541 U.S. at 68; *Cromer*, 389 F.3d at 674. Critically, however, Reynolds does not allege that the witness (or Smith) incriminated him in the McCuen murder. Instead, Reynolds aims his argument on the fact that security camera footage shows Smith and Reynolds together a short time before the shooting. (Doc. 671 ("The introduction of Smith's admission in a joint trial will unduly prejudice Reynolds because the jury is likely to use the statement as [a] circumstantial basis for inferring that he was still with Smith at the time of the shooting.")).

The *Bruton* rule, however, does not come into play if an out-of-court statement becomes incriminating only when linked to other evidence adduced at trial. *Ford*, 761 F.3d at 654 ("Any conclusion by the jury that [declarant's] statement implicated [defendant] might be made only by linking the statement to other evidence. Introduction of the statement did not, therefore, violate the *Bruton* rule."); *Cobleigh*, 75 F.3d at 248 ("*Bruton* does not bar the use of a redacted codefendant's confession even if the codefendant's confession becomes incriminating when linked with other evidence adduced at trial." (quotation omitted)). Therefore, even if Smith's admission were admitted at trial, and even if Smith opts not to testify, the fact that the jury might link Reynolds to Smith's admission from the security camera footage does not, by itself, mandate severance. Rather, limiting instructions can cure the potential prejudice that might flow from the jury hearing evidence of Smith's admission. *See Vasilakos*, 508 F.3d at 407 ("Ordinarily when, at a joint trial, a codefendant's prior statement . . . is introduced only against the declarant-codefendant, and not against the complaining codefendant, the latter has suffered no violation of his Sixth Amendment Confrontation Clause rights."); *Cobleigh*, 75 F.3d at 248 ("As the jury is presumed capable of sorting out the evidence and considering the case against each defendant separately, the appellants have failed to demonstrate an abuse of discretion [from denial of their motions for severance].").

## IV. CONCLUSION

For these reasons, Defendants' motions for severance in Case Number 2:14-cr-127 (Docs. 225, 393, 425, 436, 562, 641, 661, 664, 666, 667, 668, 669, 670, 671, and 672) and Case Number 2:15-cr-080 (Docs. 24) are **DENIED**. The Government's proposed trial groupings (Doc. 639) will govern this case moving forward, with the first trial scheduled to begin on April 4, 2016.

IT IS SO ORDERED.

ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

DATED:  October 2, 2015