IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 2:15-CR-080 |
| Plaintiff, | : | Case No. 2:14-CR-127 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| ROBERT B. LEDBETTER, *et al.* | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter comes before the Court on Defendant Clifford L. Robinson's motion to determine the admissibility of statements made by his now-deceased co-defendant, Rastaman A. Wilson, (Doc. 837), which the Court construes as a motion in limine.[1]  Because the statements in question are admissible under the Confrontation Clause, fall within an exception to the ban on hearsay for statements against the declarant's penal interests, and do not merit exclusion under Federal Rule of Evidence 403, the Court **DENIES** Robinson's motion in limine.

**I.  BACKGROUND**

Robinson is one of twenty defendants indicted on federal charges for his alleged involvement in (or with) the Short North Posse, an alleged criminal organization that operated the Short North area of Columbus, Ohio, from 2005 until 2014.  The Government charged Robinson with two counts (Counts Five and Six): murder in aid of racketeering and murder through the use of a firearm during and in relation to a crime of violence.  Both counts relate to the 2007 murder of Donathan Moon.  Robinson is scheduled to stand trial with the first group of defendants, beginning April 4, 2016 ("Trial I").

---

[1] In the interest of judicial efficiency, Christopher A. Harris (Doc. 839), Rashad A. Liston (Doc. 849), Deounte Ussury (Doc. 846), and Thomas E. Coates (Doc. 931) have filed motions seeking to join in Robinson's underlying motion.

1

Initially, Robinson was slated to stand trial with seven of his co-defendants. (Doc. 727). But one of those co-defendants, Rastaman Wilson, recently died in prison of natural causes. Like Robinson, Wilson originally faced Counts Five and Six for his alleged involvement in Donathan Moon's murder.

Robinson's attorney contends that, during the discovery phase of this case, he came across several inculpatory statements that government witnesses attribute to Rastaman Wilson that "were sure to be admitted at his trial in an attempt to establish guilt." (Doc. 837). Robinson's attorney maintains that those statements "included those to a former girlfriend as well as a person who is alleged to have been the getaway driver in the Donathan Moon homicide." (*Id.*). Robinson's attorney fears that several of those statements may have inculpated his client too, so he moved for a hearing to determine their admissibility in advance of Trial I. (*Id.*).

On February 4, 2016, the Court ordered supplemental briefing to pinpoint the following matters: (1) the precise statements from Rastaman Wilson that Robinson seeks to exclude; (2) to whom those statements were made; (3) the nature and circumstances surrounding the statements in question; and (4) the evidentiary basis for excluding those statements at trial. (Doc. 866). After meeting and conferring with the Government, Robinson's attorney filed a supplemental brief answering the Court's questions on February 11, 2016. (Doc. 893).[2] The Government then filed its Response in Opposition to the underlying motion in limine on February 23, 2016. (Doc. 917). Robinson (and Harris) opted not to file a Reply Brief. On the motion of Robinson's attorney, and with the consent of the Government, the Court agreed to resolve the underlying motion in limine on the briefing alone. (Doc. 909).

---

[2] Christopher Harris, one of Robinson's co-defendants who joined in the underlying motion in limine, likewise filed a supplemental brief addressing some of the statements at issue. (Doc. 916).

2

In his supplemental briefing, Robinson identified three categories of statements that he wants the Court to exclude from trial:

(1) Statements made during nine telephone calls initiated by Rastaman Wilson from the Ross Correctional Institution to either his mother or an unidentified female friend between November 2, 2011, and July 23, 2012. In five of those conversations, Wilson or the other party on the call referenced "Tink" or "T," which the Government alleges to be Robinson's nickname(s);

(2) Statements made during a conversation between Rastaman Wilson and "Witness 11" at Ross Correctional Institute on April 27, 2012. Witness 11, who was Wilson's friend, was acting as a confidential informant at the time, and he surreptitiously recorded their conversation. Among other topics, the two discussed the Donathan Moon murder. Wilson and Witness 11 allegedly made several references to "Tink," and the Government maintains that it is apparent from the conversation that "Tink" was involved in the murder; and

(3) Statements made during a conversation between Wilson and "Witness 21," his then-girlfriend, in 2007. Wilson spoke extensively about the Donathan Moon murder during this conversation. He also admitted his involvement and described the roles that four other men, including "Tink," and "O," played in the crime.

Co-Defendant Christopher Harris, who responded with his own supplemental briefing, "accepts that Defendant Robinson has accurately represented the statements at issue." (Doc. 916).

Robinson contends that the Court should exclude these three categories of statements under the Confrontation Clause, Federal Rule of Evidence 802 (the general bar on hearsay), and Federal Rule of Evidence 403 (regarding unfairly prejudicial evidence). The Government counters that all of the statements are admissible under the Confrontation Clause because none of the statements are "testimonial." *See generally Crawford v. Washington*, 541 U.S. 36 (2004). The Government further counters that all of the statements are admissible under Rule 802 because they fall under a hearsay exception for statements against a declarant's penal interests. *See* Fed. R. Evid. 804(b)(3). Finally, the Government counters that the statements are admissible under Rule 403 because any "prejudice" from the statements stems from their legitimate probative force rather than anything improper or unfair. *See* Fed. R. Evid. 403.

3

## II.  LEGAL STANDARDS

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  Although the Confrontation Clause provides a bedrock principle of the criminal justice system—one essential to a fair trial—its protections are not absolute.  The Supreme Court has made clear that the Confrontation Clause applies only to statements that qualify as "testimonial."  *Crawford*, 541 U.S. at 68-69 (holding that Constitution requires confrontation of declarant only "[w]here testimonial statements are at issue"); *see also Giles v. California*, 554 U.S. 353, 376 (2008) ("[O]nly *testimonial* statements are excluded by the Confrontation Clause.").  Thus, the first step in any Confrontation Clause analysis involves determining whether the statements in question are "testimonial" within the meaning of *Crawford* and its progeny.

Although *Crawford* "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial,'" the Supreme Court provided some guidance for determining whether evidence is testimonial.  *Crawford*, 541 U.S. at 68.  First, the Court observed that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."  *Id.* at 51.  The Court next offered three "formulations of [the] core class of 'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent . . . , [2] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, [and] [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (citations omitted).  Finally, the Court provided examples of statements that qualify as "testimonial" under any definition, including "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and [in response] to police interrogations."  *Id.* at 68.

4

Following *Crawford*, the Supreme Court initially refused to "produce an exhaustive classification of all conceivable statements . . . as either testimonial or nontestimonial" and expressly declined to consider "whether and when statements made to someone other than law enforcement personnel are 'testimonial.'" *Davis v. Washington*, 547 U.S. 813, 822-23 & n.2 (2006). Just last summer, however, the Court faced the question that it had previously reserved: "whether statements to persons other than law enforcement officers are subject to the Confrontation Clause." *Ohio v. Clark*, 135 S. Ct. 2173, 2181 (2015). Although the Court declined categorically to exclude statements to non-law enforcement personnel from the scope of the Confrontation Clause, the Court concluded that "such statements are much less likely to be testimonial than statements to law enforcement officers." *Id.*

Accordingly, in the wake of *Crawford*, *Davis*, *Clark*, and other cases, courts must ask, "in light of all the circumstances," whether the "'primary purpose' of the conversation [at issue] was to creat[e] an out-of-court substitute for trial testimony." *Id.* at 2180 (quotation omitted). If the primary purpose of the conversation was *not* to create an out-of-court substitute for trial testimony, then the Confrontation Clause plays no role. *Id.*; *Michigan v. Bryant*, 562 U.S. 344, 359 (2011) ("Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause."). In this Circuit, part of the "primary purpose" test includes asking whether the declarant "intended to bear testimony against he accused." *See United States v. Collins*, 799 F.3d 554, 585 (6th Cir. 2015) (brackets and quotation omitted). That determination, in turn, "depends on whether a reasonable person in the declarant's position would anticipate [the] statement being used against the accused in investigating and prosecuting the crime." *Id.* (quotation omitted).

Assuming an out-of-court statement used to prove the truth of the matter asserted passes muster under the Confrontation Clause, it still must comply with the Federal Rules of Evidence, including the general prohibition on hearsay. *Bryant*, 562 U.S. at 359; *see* Fed. R. Evid. 802. The Federal Rules of Evidence provide several exceptions to this general bar on hearsay, including one exception for unavailable declarants who make a "statement against [their own] interest." *See* Fed. R. Evid. 804(b)(3). Under this exception, hearsay statements are admissible if three conditions are satisfied: (1) "the declarant is unavailable"; (2) "from the perspective of the average, reasonable person, the statements were truly adverse to the declarant's penal interest"; and (3) "corroborating circumstances truly establish the trustworthiness of the statement[s]." *United States v. Tocco*, 200 F.3d 401, 414 (6th Cir. 2000). As the Sixth Circuit has explained, Rule 403(b)(3) permits the introduction of statements that incriminate not only the declarant, but also others, provided the three conditions of the rule are satisfied. *Id.* at 415 & n.7; *see also United States v. Franklin*, 415 F.3d 537, 548 (6th Cir. 2005); *United States v. Thurman*, 915 F. Supp. 2d 836, 880 (W.D. Ky. 2013).

Finally, assuming an out-of-court statement is admissible under both the Confrontation Clause and the general prohibition on hearsay, Federal Rule of Evidence 403 nonetheless grants trial courts discretion to exclude that statement "if its probative value is substantially outweighed" by the risk of "unfair prejudice." Fed. R. Evid. 403; *United States v. Gibbs*, 797 F.3d 416, 422 (6th Cir. 2015). The term "unfair prejudice" does not, however, encompass "the damage to a defendant's case that results from the legitimate force of the evidence." *United States v. Ford*, 761 F.3d 641, 648 (6th Cir. 2014) (quotation omitted). After all, most evidence is prejudicial in one way or another. Instead, the term "unfair prejudice" refers only to evidence which tends to lead jurors to make a decision on an improper basis. *Id.*

## III.  ANALYSIS

Robinson challenges the admissibility of Rastaman Wilson's statements on three grounds: (1) the Confrontation Clause; (2) Federal Rule of Evidence 802 (hearsay); and (3) Federal Rule of Evidence 403 (unfairly prejudicial evidence).  As explained below, Robinson's arguments lack merit.  Accordingly, the Court **DENIES** his motion in limine.

### A.  Rastaman Wilson's Statements Are Admissible Under the Confrontation Clause.

Rastaman Wilson's statements are admissible under the Confrontation Clause because none of the statements in-question involves "testimonial" evidence.  Robinson concedes that the telephone calls Wilson made from jail "are non-testimonial and [that] their admission does not pose a Confrontation Clause problem."  (Doc. 883).  The same holds true for the statements that Wilson made directly to Witnesses 11 and 21.

Witness 11 was a friend of Wilson's who traveled to the Ross Correctional Institute on April 27, 2012, and, unbeknownst to Wilson, acted as a confidential informant by wearing a hidden recording device.  This Court already analyzed that conversation in connection with Robinson's motion for severance and held that the conversation "does not implicate the Confrontation Clause" because "Rastaman Wilson's conversation with the confidential informant does not qualify as a 'testimonial' statement under *Crawford* and its progeny." (Doc. 727).  The Court based its decision on the following discussion:

> Where, as here, the declarant makes unwitting statements to a confidential informant, those statements are not "testimonial" within the meaning of *Crawford*'s Confrontation Clause rubric.  *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009) (collecting cases); *see also, e.g.*, *United States v. Watson*, 525 F.3d 583, 589 (7th Cir. 2008) ("[A] statement unwittingly made to a confidential informant and recorded by the government is not 'testimonial' for Confrontation Clause purposes."); *United States v. Saget*, 377 F.3d 223, 229 (2d Cir. 2004) ("[A] declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of *Crawford*.").

(*Id.*).  Robinson has presented no evidence or legal authority to make the Court question its earlier analysis or holding.  Therefore, "Wilson's statements to [Witness 11] do not implicate the Confrontation Clause" any more today than they did last fall.  (*Id.*).

Witness 21 was Wilson's girlfriend at the time he allegedly confessed to her about his role (and the role of others) in Donathan Moon's murder.  There is no indication that when he confided in her, his "primary purpose" was "to creat[e] an out-of-court substitute for trial testimony."  *See Clark*, 135 S. Ct. at 2180 (quotation omitted).  In other words, there is no indication that, in speaking with his girlfriend about the alleged murder, Wilson "intend[ed] to bear testimony against the accused."  *See Collins*, 799 F.3d at 585 (quotation omitted).  A reasonable person in Wilson's shoes simply would not anticipate the statements "being used against the accused in investigating and prosecuting the crime."  *Id.* (quotation omitted).

Considering "all of the relevant circumstances," the Court is hard-pressed to see how, in confessing to his role in a murder, Rastaman Wilson's "primary purpose" was to create an out-of-court substitute for damning trial testimony.  *See Clark*, 135 S. Ct. at 2180 (quotation omitted).  Indeed, statements made in confidence to close friends or loved ones, rather than to the police or other authorities, rarely, if ever, qualify as "testimonial" evidence.  *Id.* at 2181 ("[S]uch statements are much less likely to be testimonial than statements to law enforcement officers."); *see also, e.g.*, *Doan v. Carter*, 548 F.3d 449, 458 (6th Cir. 2008) ("We find that Culberson's 'statements to friends and neighbors about abuse and intimidation' allegedly inflicted by [defendant] are nontestimonial statements and are not subject to the Confrontation Clause."); *United States v. Franklin*, 415 F.3d 537, 545 (6th Cir. 2005) (holding that statements were not testimonial because witness "was privy to [declarant's] statements only as his friend and confidant" (collecting cases)).

Robinson briefly argues that Rastaman Wilson's statements to Witnesses 11 and 21 are testimonial because "[t]he primary purpose *of admitting Wilson's statements* . . . is to establish the identities of the individuals who participated in the Moon homicide, which is directly relevant to the crimes charged in counts five and six." (Doc. 883 (emphasis added)). The Court presumes that Robinson is correct insofar as explaining the *Government's* primary purpose in *introducing* Wilson's statements at trial. But the Government's primary purpose in using an out-of-court statement at trial does not determine whether that statement is testimonial in the first place. Rather, the Court must look to "the 'primary purpose' *of the conversation*" before determining whether *it* "was to 'creat[e] an out-of-court substitute for trial testimony.'" *Clark*, 135 S. Ct. at 2180 (emphasis added) (quoting *Bryant*, 562 U.S. at 358).

Where, as here, there was no interrogation or no known law-enforcement involvement of any kind when the conversation occurred, courts focus on "*whether the declarant intended to bear testimony against the accused.*" *See, e.g.*, *Johnson*, 581 F.3d at 325 (emphasis added) (brackets and quotation omitted) ("Our precedent makes clear that the intent of O'Reilly, the declarant, determines whether the statements on the tape-recording are testimonial."); *United States v. Johnson*, 440 F.3d 832, 843 (6th Cir. 2005) ("This court . . . has stated that the focus of the testimonial inquiry is on the declarant."). And, as explained, nothing indicates that Wilson's primary purpose in confiding to his friend or his then-girlfriend about a murder that he may have helped commit was to bear testimony against the accused or to assist law enforcement in investigating or prosecuting the crime. *See Johnson*, 581 F.3d at 325 (holding that statements made unwittingly to confidential informant were not testimonial); *Johnson*, 440 F.3d at 843 (holding that an unwitting declarant's statements to his "long-standing" and "close" friend were not testimonial). Therefore, Robinson's Confrontation Clause argument fails.

**B. Rastaman Wilson's Statements Fall Under an Exception to the Hearsay Rule.**

Although Rastaman Wilson's statements regarding the Donathan Moon murder qualify as hearsay, the Government correctly argues that they fall within an exception to the bar on hearsay under Rule 804(b)(3) as statements against Wilson's interests. Robinson concedes that the statements pass the first two-prongs of the three-part test for admitting statements against an unavailable declarant's interests. (*See* Doc. 883). Thus, the only matter in dispute is whether "corroborating circumstances truly establish the trustworthiness of [Wilson's] statement[s]." *Tocco*, 200 F.3d at 414.

*1. Corroborating Circumstances Establish the Trustworthiness of Wilson's Statements.*

The Court finds that corroborating circumstances *do* establish the trustworthiness of Wilson's statements. As the Sixth Circuit has explained, "[t]o determine whether a statement is sufficiently trustworthy for admission under Rule 804(b)(3), the court is not to focus on whether other evidence in the case corroborates what the statement asserts, but rather on whether there are corroborating circumstances which clearly indicate the trustworthiness of the statement itself." *Franklin*, 415 F.3d at 547 (quotation omitted); *see also Johnson*, 440 F.3d at 844 ("[I]nconsistencies or lack of corroboration are not the focus of our inquiry.").

In determining whether corroborating circumstances establish a statement's trustworthiness, courts look to various factors, including, but not limited to, the following: (1) whether the statement was made to family, friends, and loved ones as opposed to law enforcement, *see Johnson*, 581 F.3d at 327; (2) whether self-interested motives diminish the trustworthiness of the statement, such as seeking to shift blame, curry favor, or minimize the declarant's culpability, *Franklin*, 415 F.3d at 548; (3) whether the statement was mere "puffing or bragging," *id.*; and (4) whether the statement was recorded, *Johnson*, 581 F.3d at 327.

10

Wilson's statements to his family, friends, and then-girlfriend bear most of these hallmarks of trustworthiness.[3]  For starters, Wilson made all of the statements directly to people with whom he had a close personal relationship rather than to law enforcement personnel or, in the case of Witness 11, at least not to someone he knew to be working with the government. *See Johnson*, 581 F.3d at 327 ("[The declarant] was unaware that he was being recorded and therefore could not have made his statement in order to obtain a benefit from law enforcement."). This Circuit agrees that "statements made to a perceived ally rather than to police officers during an interrogation [generally] are trustworthy."  *See Tocco*, 200 F.3d at 416 (citation omitted) ("We find that the circumstances surrounding [the declarant's] statements were trustworthy, particularly in light of the fact that [his] statements were made to his son in confidence, rather than to the police or to any other authority for the purpose of shifting blame to [the defendant]."); *see also United States v. Manfre*, 368 F.3d 832, 841 (8th Cir. 2004) ("[The declarant] made the statements to his fiancée, and while a fiancée is not a wife, it is not unreasonable to read credibility and honesty into such a relationship . . . .").

Further, Wilson's conversations bear no indicia of self-interest that would diminish the trustworthiness of his statements.  He did not, for example, seek to shift the blame to others or "minimize his [own] role" in Donathan Moon's murder.  *See Franklin*, 415 F.3d at 548.  Nor is there any indication that Wilson made these statements to curry favor with law enforcement or as part of an official investigation.  *Id.*  There simply is no reason to believe that Wilson had any motivation to lie about having taken part in Moon's murder.  *See Desai v. Booker*, 732 F.3d 628, 631 (6th Cir. 2013) ("[I]ndividuals do not lightly admit to committing murder.").

---

[3] Although some of the cases cited in this section refer to "particularized guarantees of trustworthiness" under the no-longer-applicable Confrontation-Clause standard from *Ohio v. Roberts*, 448 U.S. 56, 65 (1980), rather than the standard set forth in Rule 804(b)(3), "the two analyses are similar, and under either standard the circumstances in this case [are] sufficient to corroborate the reliability of [Wilson's] statement[s]." *See Johnson*, 581 F.3d at 327.

Moreover, it seems that Wilson made most of the statements in question out of a sense of fear or anxiety rather than out of a misplaced attempt at "puffing or bragging." *See Franklin*, 415 F.3d at 548. Indeed, in at least one conversation, Wilson and his counterpart, Witness 11, contemplated how to *avoid* culpability for the Donathan Moon murder rather than bragging or boasting about their accomplishments.

Finally, several of Wilson's conversations were recorded and will be available for the jury to hear. The Sixth Circuit has listed the presence of a recording as an additional indicator of trustworthiness. *See Johnson*, 581 F.3d at 327 ("The fact that the jury heard a recording of [the declarant] making his statements eliminates the risk that the statements were inaccurately relayed to the jury . . . ."). In this case, all of Wilson's jailhouse calls were recorded and can be replayed at trial. To be sure, the jury will not hear recordings of Wilson's statements to Witnesses 11 or 21.[4] But the lack of a recording alone is not fatal to a statement's admission under Rule 403(b)(3), particularly where, as here, the other traditional indicators of trustworthiness are satisfied. *See, e.g.*, *Franklin*, 415 F.3d at 548; *Manfre*, 368 F.3d at 841-42; *Tocco*, 200 F.3d at 414-16; *United States v. Norwood*, No. 12-CR-20287, 2015 WL 2250473, at *3-5 (E.D. Mich. May 13, 2015) (recognizing "whether the statement was recorded" as a factor in Rule 403(b)(3)'s trustworthiness analysis but admitting two unrecorded statements because they bore other corroborative factors of trustworthiness).

In sum, and focusing "on the circumstances surrounding the making of the statements themselves," *Johnson*, 440 F.3d at 845, the Court concludes that the setting, context, and content of Wilson's statements adequately corroborate their trustworthiness and render them admissible under Federal Rule of Evidence 403(b)(3).

---

[4] Wilson's statements to Witness 21 were not recorded. The Government *did* record the conversation between Rastaman Wilson and Witness 11 (the confidential informant), but the Court found that the tape is unintelligible and should not be played for the jury. (Doc. 777).

*2. Defendants' Arguments to the Contrary Lack Merit.*

Robinson and Harris argue that Rastaman Wilson's statements are not trustworthy, and therefore are inadmissible under Rule 403(b)(3), because *other* evidence disclosed in this case calls into question the accuracy of Wilson's account of the murder or the identities of the assailants. (*See* Docs. 883 [Robinson] and 916 [Harris]). In short, both Robinson and Harris "argue[] that the statement[s] [are] not sufficiently trustworthy because [they] cannot be true." *See Norwood*, 2015 WL 2250473, at *9. As explained below, however, Robinson and Harris reach the wrong answer because they focus on the wrong question.

Robinson, for example, highlights that Witnesses 11 and 21 were unable to pick his photograph out of a photo array showed to them several years after the Moon homicide when asked by law enforcement officials to identify "Tink." (Doc. 883). Robinson notes that the witnesses were unable to make a corresponding identification despite the fact that "when interviewed, both Witnesses 11 and 21 informed law enforcement officers that they had a personal acquaintance with 'Tink.'" (*Id.*). From these discrepancies, Robinson reasons that "Wilson's statements are not trustworthy to support the inferential leap that Robinson is the 'Tink' [Wilson] identified," that thus, that his statements "should not be admitted." (*Id.*).

Harris notes that "the account by Witness 21 as to Donathan Moon's murder is inconsistent with the account of the event as related by the woman present in the room at the time of [the] murder." (Doc. 916). Harris likewise contends that Wilson's version of events, including his claim to have shot a woman in the bedroom where the murder took place, "is inconsistent with the physical evidence and her statements regarding this event," as well as other witnesses' recollection of the murder. (*Id.*). Harris thus questions "the trustworthiness of [Wilson's] statements themselves." (*Id.*).

As Robinson's own supplemental briefing recognizes, however, "the focus" of Rule 804(b)(3)'s trustworthiness analysis is *not* "on whether other evidence in the case corroborates what the statement asserts, but rather on whether there are corroborating circumstances *which clearly indicate the trustworthiness of the statement itself*." (Doc. 883 (emphasis added) (citing *Franklin*, 415 F.3d at 547)).  Thus, in making an admissibility determination under Rule 804(b)(3), "courts do not consider the accuracy of the statement" itself. *Norwood*, 2015 WL 2250473, at *9; *see also Thurman*, 915 F. Supp. 2d at 882-83 (eschewing reliance on evidence that "run[s] to the accuracy of the extrajudicial statements . . . rather than to the trustworthiness of the statement itself" in making Rule 403(b)(3) determination).

Robinson and Harris remain "free to undermine the accuracy of [Wilson's] statement[s]" before the jury on whatever grounds they deem fit.  *See Norwood*, 2015 WL 2250473, at *9. The jury may well conclude the results of the photo arrays cut against the credibility of Witnesses 11 and 21 (who will testify to what Robinson told them) or that "inconsistencies in the statements themselves and with the facts the government [seeks] to establish" render Wilson's statements unbelievable.  *See Johnson*, 440 F.3d at 844 (brackets and quotation omitted).  But "[s]uch inconsistencies or lack of corroboration [as to the truth of the statements] are not the focus of [the] inquiry" under Rule 804(b)(3).  *See id.*  When viewed under the correct lens—*i.e.*, "the circumstances surrounding the making of the statement itself," *see id.*, the Court concludes that Rastaman Wilson's are admissible under Rule 804(b)(3).

### C. Rastaman Wilson's Statements Are Not Unfairly Prejudicial.

Finally, Robinson and Harris fail to establish that any "unfair prejudice" from Wilson's statements "substantially outweigh[s]" their probative value under Federal Rule of Evidence 403. Accordingly, the Court will not exclude the statements on that basis.

For one thing, the evidence is highly probative. Wilson not only confided to his mom, his then-girlfriend, and his other friends about a murder in which he participated, but he also shared the identities (or nicknames) of those with whom he committed the crime. This evidence cuts to the core of Counts Five and Six. *See Johnson*, 581 F.3d at 323-24, 327-28 (rejecting Rule 403 challenge where co-defendant admitted to a friend/confidential informant his own involvement, and involvement of two others, in unsolved bank robbery and murder). For another, any "prejudice" from Wilson's statements stems "from the[ir] legitimate probative force," not the likelihood of the jury reaching "a decision on an improper basis." *Id.* at 327-28 (quotation omitted). Under Rule 403, evidence is not "unfairly prejudicial" just because "it paints the defendant in a bad light." *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006) (quotation omitted).

Although defendants speculate that the lack of corroborating information linking Wilson's statements regarding "Tink" and "O" to Robinson and Harris will mislead the jury or prejudice their case—these matters go to the *weight* of Wilson's statements—not their *admissibility*. The Government remains free to attempt to link the nicknames "Tink" and "O" to Robinson and Harris through Wilson's taped jail calls, the testimony of Witnesses 11 and 21, or other corroborating evidence. Robinson and Harris, meanwhile, remain free to challenge those purported links by vigorously cross-examining Witnesses 11 and 21 regarding their inability to pick out certain defendants from photo arrays, through cross-examination of other witnesses, or through the presentation of their own countervailing evidence. But the fact that the jury may or may not *believe* Wilson's statements does not mean that the jury should not *hear* those statements altogether.

## IV.  CONCLUSION

For these reasons, Robinson's motion in limine regarding Rastaman Wilson's statements (Doc. 837) is **DENIED**.  The remaining motions seeking to join in Robinson's underlying motion (Docs. 839, 846, 849, and 931) are **GRANTED but MOOT**.

**IT IS SO ORDERED.**

                                                          s/ Algenon L. Marbley
                                                       **ALGENON L. MARBLEY**
                                                       **UNITED STATES DISTRICT JUDGE**

**DATED:  March 21, 2016**