IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 2:15-CR-080 |
| Plaintiff, | : | Case No. 2:14-CR-127 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| ROBERT B. LEDBETTER, *et al.* | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter comes before the Court on Defendant Christopher A. Harris's motion to exclude evidence regarding his involvement in an unindicted overt act (Doc. 926) and Defendant Clifford L. Robinson's motion to dismiss Count Six of the Superseding Indictment (Doc. 956).[1] Harris argues that the Court should exclude evidence regarding his involvement in the 2006 murder of Alan Johnson because the Government did not disclose its intent to rely on that evidence until forty-three days before trial. Robinson, meanwhile, argues that the Court should dismiss Count Six because the residual clause from 18 U.S.C. § 924(c)(3)(B), which defines a "crime of violence" for federal firearm offenses, violates the "void-for-vagueness doctrine" of the Due Process Clause. Harris, however, overlooks that the Government need not allege or prove *any* overt acts to prove a RICO conspiracy and, as such, is not limited in its proof at trial to the overt acts alleged in the Superseding Indictment. And Robinson concedes that the Sixth Circuit foreclosed his void-for-vagueness argument in *United States v. Taylor*, No. 09-5517, 2016 WL 537444, at *32-35 (6th Cir. Feb. 11, 2016). Accordingly, the Court **DENIES** Defendants' pretrial motions.

---

[1] In the interest of judicial efficiency, Harris (Doc. 964) and Robert B. Ledbetter (Doc. 970) moved to adopt Robinson's underlying motion with respect to several of his firearm-murder counts as well.

1

# I.  BACKGROUND

Harris and Robinson are two of twenty defendants originally indicted for their alleged involvement in (or with) the Short North Posse, an alleged criminal organization that operated the Short North area of Columbus, Ohio, from 2005 until 2014.  Harris faces nine charges, including one count of RICO conspiracy, four counts of murder in aid of racketeering, three counts of murder through use of a firearm during and in relation to a drug trafficking crime, and one count of murder through use of a firearm during and in relation to a crime of violence.  Robinson faces two charges: murder in aid of racketeering and murder through the use of a firearm during and in relation to a crime of violence.  Harris and Robinson are scheduled to stand trial with the first group of defendants, beginning April 4, 2016 ("Trial I").

### A.  Evidence of Harris's Involvement in the 2006 Murder of Alan Johnson

When the Government filed the Superseding Indictment in this case, it listed 112 overt acts allegedly taken in furtherance of the charged RICO conspiracy.  (Doc. 300).  The Government, however, has reserved the right to adduce evidence of any overt act about which it has evidence, regardless of whether the Superseding Indictment specifically listed that overt act.  (Doc. 223).  To date, the Government has filed four notices of intent to rely on evidence beyond the 112 overt acts specified in the Superseding Indictment.  (Docs. 223, 565, 778, and 910).  As the Government has explained, the overt acts listed in the Superseding Indictment do not constitute "an exhaustive list of the evidence that the government intends to rely on to prove its case."  (Doc. 223).  Instead, "[t]he overt acts alleged in the [Superseding] Indictment serve only as a general narrative of some of the events that the government intends to rely on to prove the existence of the [RICO] enterprise, the membership in or association with the enterprise[,] and the conspiracy to commit the predicate offenses."  (*Id.*).

2

Defendants, including Harris, previously challenged the Government's efforts to rely on evidence beyond the 112 indicted overt acts at trial. (*See* Doc. 704 ("Defendants argue that the Government's anticipated use of evidence beyond the overt acts specified in the Superseding Indictment violates the Fifth and Sixth Amendments.")). The Court rejected that challenge in a lengthy Opinion and Order which denied Defendants' motions to dismiss thirteen unindicted overt acts the Government previously had disclosed. (*Id.* at PageID 3204-06).

Since then, the Government filed a supplemental notice of intent to rely on evidence which disclosed six additional (but previously unindicted) overt acts and added one additional defendant to a previously indicted overt act. (Doc. 778). One of those additional overt acts purportedly involved Harris and allegedly took place on March 15, 2006. (*Id.*). Just last month, the Government filed a *second* supplemental notice of intent to rely on evidence, which restated the nineteen previously disclosed (but unindicted) overt acts. (Doc. 910). In *that* notice, the Government also named Harris in a previously indicted overt act (Overt Act No. Twenty) that, until that point, had not implicated Harris. The second supplemental notice stated as follows:

> 13. On or about April 16, 2006, **ROBERT B. LEDBETTER, aka Brandon, aka Killer B, CHRISTOPHER A. HARRIS, aka O-Dog,** Marcus Peters (deceased) and an unindicted coconspirator murdered Alan Johnson in retaliation for the murder of SNP member Elisha Ledbetter, by shooting him with a firearm. ***[NEW AS TO CHRISTOPHER A. HARRIS ONLY]***

(*Id.* at PageID 4340).

Harris now seeks to exclude evidence of his involvement in Johnson's murder. (Doc. 926). He argues that the Government had several opportunities to add him as a defendant to that crime, which was charged as both a substantive count in the Superseding Indictment (Count Four) and as an overt act related to the RICO conspiracy (Overt Act No. Twenty), but did not do so until forty-three days before trial. (*Id.*).

3

Harris argues that he does not have time to investigate the allegations of this murder with trial so close and his attorneys already bogged down in pretrial motions and hearings. (*Id.*). Moreover, he contends that the Government actually had reason to believe he was involved in the murder much sooner than February 21, 2016, when the Government filed its second supplemental notice of intent to rely on evidence. (*Id.* at PageID 4494 (citing Government's *Brady* disclosures (Doc. 885), filed on February 12, 2016)). Finally, Harris suggests that "[a]llowing this evidence to be admitted sets the dangerous precedent of the Government amending charges right up to and during trial." (*Id.* at PageID 4495).

## B. Robinsons' Constitutional Challenge to 18 U.S.C. § 924(c)(3)(B)

Robinson, on the other hand, raises a "void-for-vagueness" challenge to the residual clause from 18 U.S.C. § 924(c)(3)(B), which defines a "crime of violence" for certain federal firearm offenses as any felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." (Doc. 956). Robinson seeks dismissal of Count Six, which charges him with the murder of Donathan Moon through the use of a firearm during and in relation to a "crime of violence" under 18 U.S.C. § 924(c) and (j). (*Id.*). Robinson finds some support in a Supreme Court decision from last term, *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), which struck down a *similar* residual clause from the Armed Career Criminal Act (codified at 18 U.S.C. § 924(e)(2)(B)(ii)) as being unconstitutionally vague. (*Id.*). Robinson concedes, however, that the Sixth Circuit foreclosed his argument in *United States v. Taylor*, when the court rejected a void-for-vagueness challenge to § 924(c)(3)(B) based on *Johnson v. United States*. (*Id.* at PageID 4609 (citing *Taylor*, 2016 WL 537444, at *32)). Accordingly, Robinson merely raises this argument to preserve it for appeal. (*Id.*).

4

## II. ANALYSIS

Harris argues for the exclusion of evidence regarding his involvement in the 2006 murder of Alan Johnson, and Robinson argues for the dismissal of Count Six, which charges him with the 2007 murder of Donathan Moon. As explained below, the Court **DENIES** both requests.

### A. The Government May Rely on Evidence of Christopher Harris's Involvement in the 2006 Murder of Alan Johnson to Prove the Charged RICO Conspiracy.

The Court already adjudicated the Government's efforts to prove the charged RICO conspiracy through evidence of unindicted overt acts in an Opinion and Order from last fall. (Doc. 704). The Court will not belabor those efforts here. Suffice to say that "[n]either [18 U.S.C.] § 1962(d) nor the cases interpreting that subsection require proof of a specific predicate act or *any* overt act taken in furtherance of the [charged RICO] conspiracy." (Doc. 704 at PageID 3204 (citing *United States v. Fowler*, 535 F.3d 408, 421 (6th Cir. 2008))). As such, "any allegations as to overt acts, including predicate acts of racketeering[] that [Harris] may have committed . . . *would constitute surplusage rather than an essential element* of the charged conspiracy." (*Id.* (citing *United States v. Tello*, 687 F.3d 785, 795-95 (7th Cir. 2012))).

As this Court explained, "the inclusion of an overt act in an indictment does not preclude the Government from proving other overt acts [at trial] so long as they are in furtherance of the conspiracy and there is no prejudice to the Defendant"—*even under the more general federal conspiracy statute*, which *does* require proof of an overt act." (*Id.* at PageID 3405 (collecting cases)). In short, "as long as defendant[s] [are] given notice of the core of criminality to be proven at trial, courts afford[] the prosecution significant flexibility to prove the conspiracy's operation through both unalleged and alleged overt acts." (*Id.* (quotation omitted) (collecting cases)). That is all the Government advocates for here—proving the RICO conspiracy through indicted and unindicted overt acts alike.

5

Harris seems to concede the *general* rule described above—*i.e.*, that the Government may introduce evidence regarding unindicted overt acts to prove the alleged RICO conspiracy. But Harris takes issue with the timing and mechanics of the Government's second supplemental notice of intent to rely on evidence beyond the overt acts listed in the Superseding Indictment, which names him as a participant in Alan Johnson's murder. Harris essentially objects to the timing of a notice the Government was not required to provide him in the first instance. His argument lacks merit for several reasons.

*First*, the Government may rely on evidence of unindicted overt acts to prove the alleged RICO conspiracy so long as they fall under the "core of criminality" alleged in the Superseding Indictment. *See United States v. Salmonese*, 352 F.3d 608, 620-21 (2d Cir. 2003); *see also United States v. Glecier*, 923 F.2d 496, 499-500 (7th Cir. 1991) (holding that government need only allege the *type* of predicate racketeering activity underpinning a RICO-conspiracy charge, not every specific predicate act that government will offer at trial); *United States v. Lewis*, 759 F.2d 1316, 1344 (8th Cir. 1985) ("Where the indictment fairly specifies the offense charged and notifies the defendant of the particulars, *the defendant has knowledge that other overt acts underlying the conspiracy might be pleaded at trial*." (emphasis added)).

*Second*, Harris's role in Alan Johnson's murder falls under the "core of criminality" alleged in the Superseding Indictment. The Government named Harris as one of the original defendants in the RICO conspiracy charge; the Government has maintained that murder was one of the *types* of predicate racketeering activity by which the defendants agreed to conduct the affairs of the Short North Posse; the Government contends that Alan Johnson was murdered within the timeframe in which the Short North Posse operated; and Johnson's murder fits within the general *modus operandi* alleged in the Superseding Indictment. (*See* Doc. 300).

*Third*, Harris points to no authority which suggests that when the government opts to prove a RICO conspiracy through evidence of unindicted overt acts that fall under the "core of criminality" alleged in the indictment, the government owes a corresponding duty to notify the defendant before trial.  Without commenting on the wisdom of the Federal Rules of Criminal Procedure, the Court notes that they provide for only limited discovery from the government—not a pretrial disclosure of the government's theory of the case or a detailed preview of its proof at trial.  *See generally United States v. Presser*, 844 F.2d 1275, 1284-85 (6th Cir. 1988).

*Fourth*, despite this lack of a duty, the Government has provided timely notices of the evidence it intends to rely on to prove the alleged RICO conspiracy.  (*See* Docs. 223, 565, 778, and 910).  In a case this large and complex, it stands to reason that the Government might uncover additional evidence as its investigation and trial preparations unfold.  *See United States v. Kenny*, 462 F.2d 1205, 1214-15 (3d Cir. 1982) (holding that government was not required to allege every violation of law which occurred as a result of ongoing conspiracy where some violations were not known at time of indictment).  When that has occurred, the Government has notified the defendants.

*Fifth*, the Court finds no bad faith on the Government's part with respect to its second supplemental notice of intent to rely on evidence.  As the parties' briefing indicates, the Government only recently learned of credible evidence tying Harris to Alan Johnson's murder. (*See* Doc. 958 at PageID 4642-43).  Witness 13, who is a cooperating co-conspirator set to testify at Trial I, was present for Johnson's murder.  During his initial proffers with the Government, Witness 13 did not mention Harris's involvement in that murder.  As such, the Government did not intend to allege involvement by Harris, despite contradictory statements inculpating him from other witnesses who were *not* present for the murder.  (*See* Doc. 885, PageID 4259).

7

Circumstances changed, however, when the Government confronted Witness 13 about his version of the murder, which seemed at odds with the other witnesses' statements. The Government asserts that this confrontation was delayed because Witness 13's attorney was out of the continental United States. On February 21, 2016, the Government met with Witness 13 and his attorney via teleconference. When questioned about Harris being involved in the Johnson murder, Witness 13 admitted *for the first time* that Harris was in fact involved. Witness 13 further advised that he had not previously revealed Harris's participation because of a personal relationship between the two men. At that point, the Government advised both Witness 13 and his attorney that the Government will revoke his plea agreement based on this material omission. The Government also called Harris's counsel to inform them of the substance of the meeting with Witness 13 and of the Government's intent to rely on that evidence at trial. The Government's second supplemental notice of intent to rely on evidence soon followed.

Given this chain of events, the Court finds no bad faith on the Government's part, as Harris alleges. Faced with conflicting statements regarding a murder—some that indicated Harris *was* involved (from witnesses who were *not* present) and another that indicated Harris was *not* involved (from a witness who *was* present)—the Government opted to play it safe by corroborating the inculpatory statements *before* accusing Harris of participating in the murder. The Court does not find fault in this approach.

*Finally*, Harris will not suffer prejudice as a result of the Government's reliance on evidence of his involvement in the Alan Johnson murder. *See, e.g.*, *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998) (holding that unindicted overt acts may be proved "at least so long [as] there is no prejudice to the defendant"); *United States v. Abdi*, 498 F. Supp. 2d 1048, 1083 (S.D. Ohio 2007) (Marbley, J.) (same).

8

To reiterate, the Government owed Harris no duty to supply this information in advance of trial or, at the very least, in advance of the Court's deadlines for Jencks-Act material and corresponding *Brady* disclosures. The Superseding Indictment adequately placed Harris on notice that the Government intended to prove the alleged RICO conspiracy with evidence showing "a pattern of racketeering activity . . . involving multiple acts indictable [for] . . . Murder, chargeable under Ohio [law]" for the period of time "[b]eginning in or about 2005 . . . and continuing thereafter up to the date of the indictment." (Doc. 300, PageID 1158-59). The Superseding Indictment also provided a detailed description of the alleged RICO enterprise, its members and affiliates, its purposes, its means and methods of operation, and the nature of the overarching conspiracy.  (Doc. 300). As the Seventh Circuit explained in a case involving nearly identical language from an indictment, "[f]urther detail was unnecessary: the indictment did not need to identify the specific predicate acts that [Defendants] agreed would be committed, nor was it necessary for the government to prove that any of the racketeering acts referenced . . . occurred at a particular time or place." *See Tello*, 687 F.3d at 795. Moreover, Harris in fact *has* learned of the Government's intent to rely on evidence of his participation in the Johnson murder in advance of trial through discussions with his counsel, formal notice, and an opportunity to view and take notes of a summary of Witness 13's new statement.

Contrary to Harris's argument, the Government is not "amending charges right up to and during trial merely because its witnesses change their statements," nor is the Court forcing Harris "to be ready for trial in a murder case in 43 days." (Doc. 926 at PageID 4495). The *charge* remains the same—RICO conspiracy. The *evidence* the Government intends to rely on to prove that charge may have changed since the Superseding Indictment was filed, but not so drastically as to amount to a variance or constructive amendment. (*See generally* Doc. 704).

9

Further, the Government's second supplemental notice of intent to rely on evidence does not prejudice Harris with respect to potential *sentencing*, because the Superseding Indictment contained no special sentencing allegations for Harris's involvement in the Johnson murder. (*See* Doc. 300). Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court cannot impose the higher statutory sentence of life imprisonment for Count One due to Harris's involvement in the Johnson murder because that fact—which, if true, would increase the maximum statutory penalty—was not alleged in the Superseding Indictment. *United States v. Cotton*, 535 U.S. 625, 627 (2002) ("In federal prosecutions, such facts must also be charged in the indictment."); *United States v. Stewart*, 306 F.3d 295, 314 (6th Cir. 2002) (finding *Apprendi* error due, in part, to district court finding facts essential to punishment without those facts being alleged in the indictment). The Court can, however, impose a life sentence on Harris as to the other three murders referenced in the special sentencing allegations, should the jury make the requisite findings. *See, e.g.*, *United States v. Nagi*, 541 F. App'x 556, 576 (6th Cir. 2013) (reversing life sentence for RICO conspiracy defendant in the absence of "special findings" as to his participation in life-eligible predicate acts in light of *Apprendi*); *United States v. Benabe*, 654 F.3d 753, 777 (7th Cir. 2011) (finding special verdicts on four murders included in the indictment "necessary to comply with the requirement of *Apprendi*" where defendants were convicted of RICO conspiracy).

Finally, as Harris concedes, the Government could seek an indictment for additional crimes as it has done once already in this case—an outcome potentially more prejudicial than defending against the same RICO-conspiracy count alleged all along. (Doc. 965 at PageID 4752 ("Mr. Harris concedes that, even at this late date, the Grand Jury could return Indictments for additional crimes as it did with respect to the Brumfield murder.")).

10

The Court is not blind to Harris's frustration.  Over ninety years ago, Judge Learned Hand referred to a conspiracy charge as the "darling of the modern prosecutor's nursery," *Harrison v. United States*, 7 F.2d 259, 263 (2d Cir. 1925), and that was before the advent of RICO, which provides further substantive and procedural advantages to the government, *see United States v. Applins*, 637 F.3d 59, 74 (2d Cir. 2011) ("The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in [18 U.S.C.] § 371. . . . The RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act . . . ." (quoting *Salinas v. United States*, 522 U.S. 52, 63-64 (1997))).  Defending against a RICO-conspiracy charge is not easy, and it may seem even less so upon learning just six weeks before trial that the Government intends to introduce evidence of a fifth murder.  Nevertheless, learning of the Government's trial evidence *as to a non-essential element of the charged conspiracy offense* six weeks ahead of time seems preferable to learning of it *at* trial (or in connection with the Government's Jencks-Act disclosures), which is all Harris was entitled to under the law.  *See United States v. Stone*, 323 F. Supp. 2d 886, 893 (E.D. Tenn. 2004) ("Brief excerpts from decisions of other circuits demonstrate the wide acceptance of permitting proof of unalleged overt acts committed in furtherance of a conspiracy to be considered by a jury." (collecting cases)).

For these reasons, the Court will not exclude evidence that Harris participated in the 2006 murder of Alan Johnson at Trial I.  The Court passes no judgment on the Government's assertion that "[i]t is quite possible that additional co-defendants of Harris may decide to cooperate against [him] in the upcoming trial" and that "[t]his new information may also add overt acts the Government will rely upon to prove the RICO conspiracy."  (Doc. 958 at PageID 4645).  The Court will address those matters if, and when, they arise.

### B.  The Court Will not Dismiss Count Six Because the Sixth Circuit Has Determined that 18 U.S.C. § 924(c)(3)(B) Is not Unconstitutionally Vague.

As Robinson concedes, this Court is bound by the Sixth Circuit's recent determination that 18 U.S.C. § 924(c)(3)(B)—which forms an essential element of Count Six—passes constitutional muster under the "void-for-vagueness" doctrine.  (Doc. 956 at PageID 4609-70 ("[U]ndersigned counsel understands this Court is obligated to follow *Taylor* and will deny this motion." (citing *Taylor*, 2016 WL 537444, at *32-35))).  Accordingly, the Court cannot dismiss Count Six due to vagueness under the Due Process Clause.

Robinson and the dissenting opinion in *Taylor* may have the better view of the alleged infirmities with § 924(c)(3)(B).  *See Taylor*, 2016 WL 537444, at *50-53 (White, J., dissenting). Indeed, as both the majority and dissenting opinions from *Taylor* point out, two other circuits have addressed this issue in the context of challenges to 18 U.S.C. § 16(b), which provides identical language to § 924(c)(3)(B), and have "[r]eject[ed] the very distinctions the [*Taylor*] majority advance[d] . . . [and] held the statute unconstitutionally vague."  *Id.* at *53 (citing *United States v. Vivas-Ceja*, 808 F.3d 719, 722-24 (7th Cir. 2015), and *Dimaya v. Lynch*, 803 F.3d 1110, 1114-20 (9th Cir. 2015)).

Due to this apparent circuit split, Robinson merely raises the vagueness issue in the hope that it "might find its way into the United States Supreme Court."  (Doc. 956 at PageID 4610). The Court commends Robinson's counsel for his diligence and candor in raising this issue. Nevertheless, *this* Court remains bound by the majority opinion in *Taylor*.

### III.  CONCLUSION

For these reasons, Harris's motion to exclude evidence (Doc. 926) and Robinson's motion to dismiss Count Six (Doc. 956) are **DENIED**.  The remaining motions to join in Robinson's motion (Docs. 964 and 970) are **GRANTED but MOOT**.  Although not necessary,

Harris filed a duplicate motion (Doc. 53) on the Court's docket in Joined Case No. 15-cr-080. That motion likewise is **DENIED**.

    **IT IS SO ORDERED.**

                                                   **s/ Algenon L. Marbley**
                                                   **ALGENON L. MARBLEY**
                                                   **UNITED STATES DISTRICT JUDGE**

**DATED:  March 23, 2016**